244 So.2d 400 (1971)
Bryan Leston JOHNSON, Mattle Alice Johnson and Theresa Ann Johnson, a Minor,
v.
CONSOLIDATED AMERICAN LIFE INSURANCE COMPANY.
No. 46074
Supreme Court of Mississippi.
February 15, 1971.
Waller & Fox, Jackson, for appellants.
Heidelberg, Woodliff & Franks, W. Swan Yerger, William H. Brown, Jr., Jackson, for appellee.
*401 GILLESPIE, Presiding Justice.
Consolidated American Life Insurance Company (hereinafter Insurance Company) sued Theresa Ann Johnson, a minor (hereinafter Insured or Theresa Ann), and her parents in the Chancery Court of Hinds County for the reformation of an insurance policy on the ground of mutual mistake. The chancery court sustained the prayer of the bill of complaint and decreed a reformation of the policy. Defendants appealed. The appeal presents the following questions: (1) Whether the mistake was a mutual one, (2) Whether the incontestability clause of the policy is a defense to the suit to reform the policy, (3) Whether the court properly admitted in evidence another policy issued by Insurance Company to insured's minor sister at the same time the policy in question was issued, and (4) Whether the decree reforming the policy was a proper exercise of equity jurisdiction. The trial court resolved these questions in favor of Insurance Company. We affirm.
The facts. On December 8, 1960, Bryan Leston Johnson, the father of Theresa Ann Johnson, age eight, and Marie Bryan *402 Johnson, age two, made applications to an agent of Insurance Company for a $5,000 life insurance policy on the life of each child. The policies were issued to each child and were the same except a small difference in premiums and certain benefits due to the difference in age. The policies were delivered to the father a few days after December 8, 1960, and all premiums were thereafter paid. When he received the policies the father looked at them to see the names on the policies and the amount of the premium, but he did not read the options contained in the policies. Sometime prior to December 8, 1969, the eighth anniversary of the policies, the father read the options in the policies. The policies contained various options on page two. In Theresa Ann's policy Option 3 was as follows:
At the end of 8 years surrender this policy to the Company with all coupons attached for a paid-up policy for the full face amount hereof and receive in cash the sum of $5,000.

The figures 8 and $5,000 were filled in by typewriter. The balance of Option 3 was printed.
The evidence is clear and convincing that in filling in the blanks in Theresa Ann's policy, Insurance Company made a clerical error in Option 3 by filling in $5,000 as the amount of cash instead of $19.20. The proof on this question was supplied by the testimony of Insurance Company's underwriter and the rate schedules furnished Insurance Company's salesmen and actuarial tables. Moreover, Theresa Ann's policy showed in the same block containing Option 3 entitled "Guaranteed Coupons" that if premiums were paid for twenty years the policy could be surrendered for a paid up life policy of $5,000 and only $3,011.80 cash. The policy also contains a page entitled "Short Pay Options" which provide that after payment of premiums for eight years the policy could be surrendered for a paid up policy for $5,000 and cash of $19.20. Insurance Company had no occasion to examine its file on Insured's policy until it was surrendered under Option 3, and was not aware of the mistake until that time. After premiums had been paid for eight years Theresa Ann's father requested Insurance Company to issue Theresa Ann a paid up policy for $5,000 and pay her $5,000 in cash. The Insurance Company tendered the paid up policy and $19.20 cash, which was refused. Insurance Company then filed this suit to reform the policy.

1. Was the mistake mutual?

Insured contends that there was no mutual mistake because the proof shows that the clerical error was made by some employee of Insurance Company and that neither Insured nor her father had anything to do with the mistake.
The general rule in this state and elsewhere is that reformation of a contract is justified only (1) if the mistake is a mutual one, or (2) where there is a mistake on the part of one party and fraud or inequitable conduct on the part of the other. Allison v. Allison, 203 Miss. 15, 33 So.2d 289 (1948). No fraud is alleged or proved in this case.
The mistake that will justify a reformation must be in the drafting of the instrument, not in the making of the contract. 45 Am.Jur., Reformation of Instruments § 46 (1943). When the Insurance Company accepted the application and premium, the contract came into being. What were the terms of the policy thus intended by both parties to be issued? The application showed the face amount of the policy, age of the insured, the amount of the premium, and the kind of policy. When these data were applied to Insurance Company's schedules and tables and the policy forms, the precise terms of the policy were thus determined. This is what the parties intended. In Option 3 of Theresa Ann's policy the second typewritten figure was intended to be $19.20, but in drafting the policy the figure $5,000 *403 was mistakenly written instead of $19.20. The mistake was made by Insurance Company, but in legal contemplation both parties intended the figure to be $19.20. Therefore, the mistake was mutual. Smith v. Federal Land Bank of New Orleans, 178 Miss. 600, 173 So.2d 673 (1937); Berry v. Continental Life Ins. Co., 224 Mo. App. 1207, 33 S.W.2d 1016 (1931).

2. The incontestability clause.

The policy contained the following clause:
Incontestability  this policy shall be incontestable after two years from its date, except for non-payment of premiums and except as to provisions and conditions (if any) relating to benefits to total and permanent disability and those granting additional benefits against death by accident.
In our opinion this suit to reform the policy is not a contest of the policy within the meaning of the incontestability clause. We agree with the great majority of cases from other jurisdictions in holding that if there are grounds for granting the equitable remedy of reformation, the incontestable clause is no defense. Ann. 7, A.L.R.2d 504 (1949). The cases generally hold that a suit for reformation is not a contest of the policy but an attempt to have the court of equity determine the insurer's liability in accord with the actual agreement of the parties.

3. Admissibility of the Marie Bryan Johnson policy.

The applications for the two policies on the lives of Theresa Ann and Marie Bryan were made at the same time. This was set forth in the bill of complaint by Insurance Company, and copies were attached to the bill of complaint. Insured moved to strike all reference in the pleadings to the Marie Bryan policy and objected to the admission of evidence concerning that policy. The action of the trial court in considering the Marie Bryan application and policy is assigned as error. We hold that the application and the policy issued pursuant thereto on the life of Marie Bryan were properly considered by the trial court. No authority is cited for the proposition urged by Insured on this question. All issues were clearly and convincingly established by other evidence on behalf of Insurance Company, but the Marie Bryan application and policy corroborated the other evidence that there was in fact a mutual mistake in the issuance of the Theresa Ann policy.

4. Was the decree reforming the policy a proper exercise of equity jurisdiction?

Insured contends that equity should not give relief if the party alleging the same to be a mistake could by reasonable diligence have ascertained the real facts, citing Hunt v. Davis, 208 Miss. 710, 45 So.2d 350 (1950). In the Hunt case the mistake was not only unilateral; it was not in what mineral acreage Davis intended to convey, but the extent of his residual interest. This Court has recognized that "prudent business men make many mistakes, and these mistakes are found under many forms under a variety of circumstances, but the limitations of the jurisdiction of equity to correct mutual mistake of fact are indeed few." Brimm v. McGee, 119 Miss. 52, 80 So. 379 (1919). In Smith v. Federal Land Bank of New Orleans, supra, the inadvertent error resulting in omitting ten acres of land from the description in a deed of trust was made by an agent of the Federal Land Bank, but the court sustained the prayer of the Federal Land Bank to reform the deed of trust so as to include the omitted ten acres. The error in the present case, as in Smith v. Federal Land Bank of New Orleans, supra, was inadvertent and was made by the party seeking reformation of the instrument. Insurance policies may be reformed as other contracts in a proper case. 43 Am.Jur.2d, Insurance § 356 (1969).
*404 In our opinion the facts of this case reveal a strong call on the power of equity to prevent injustice, and the chancellor's decree is in full accord with the equity jurisprudence of this state.
Affirmed.
RODGERS, JONES, BRADY and INZER, JJ., concur.