789 So.2d 126 (2001)
Cynthia PALMERE, Appellant
v.
Henry E. CURTIS, Appellee.
No. 2000-CA-00976-COA.
Court of Appeals of Mississippi.
June 26, 2001.
*127 Robert O. Homes Jr., Gulfport, Attorney for Appellant.
Edward F. Donovan, Biloxi, Attorney for Appellee.
Before McMILLIN, C.J., PAYNE, BRIDGES, and MYERS, JJ.
PAYNE, J., for the Court:

PROCEDURAL HISTORY

FACTS
¶ 1. Cynthia Palmere and Henry Curtis were divorced in December of 1988. The couple had one child, Dominic John Curtis (Nicky), who was three years old at that *128 time. In 1998, the Department of Human Services filed a petition for modification on Palmere's behalf, requesting an increase in monthly child support. Curtis admitted a material change in circumstances and that a larger child support award was justified. However, in his answer, Curtis also submitted a counterclaim for contempt against Palmere based on his contention that she deliberately obstructed visitation and acted to alienate Nicky's natural affections away from Curtis. Palmere denied the allegations and asserted her affirmative defense that the allegations were made for intentional and malicious reasons.
¶ 2. All issues were set for trial in April 1999. However, the parties reached an agreement concerning the upward adjustment of child support, and the remaining issues were postponed. The parties were unable to reach a consensus on the form and content of an order reciting the parties' agreement and the court's directions, so the chancellor created the order, dated April 28, 1999. The remaining claims were finally heard on March 20, 2000. At the conclusion of Curtis's case and before Palmere could give direct testimony or put on her case, Chancellor Walter W. Teel, Second Judicial District of Harrison County, Mississippi, called for a conference in chambers. Thereafter, the parties announced a settlement, the terms of which were dictated into the record. The chancellor asked Curtis's attorney to prepare a judgment, which Palmere's attorney refused to sign, claiming it did not conform to the settlement dictated into the record. The chancellor, nevertheless, issued the judgment without the signature of Palmere or her attorney. Palmere disagrees with the wording of one of the terms of the settlement and now appeals.
¶ 3. Curtis filed a motion to strike portions of Palmere's brief. Without making a detailed review of the language to which Curtis objects, we find it irrelevant to our analysis of the remaining issues. However, finding error, the case is reversed and remanded.

STATEMENT OF ISSUES

STANDARD OF REVIEW
¶ 4. Palmere makes the following assignments of error:
I. WHETHER THE JUDGMENT APPEALED FROM IS CONTRARY TO THE PARTIES' SETTLEMENT AGREEMENT?
II. WHETHER THE CHANCELLOR HAD THE POWER TO ISSUE A CONSENT JUDGMENT TO WHICH ONE OF THE PARTIES DID NOT CONSENT?
The standard of review for this case is as follows:
This court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.
Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990).

DISCUSSION
¶ 5. This is an appeal on the record, involving the terms of the settlement reached by the parties. As stated in Chancellor Teel's judgment of May 19, 2000:
Following the various discussions, the Court received the announcement of the parties that a global settlement had been reached along the lines proposed by the Court. The terms of the settlement of all pending issues were dictated into the record by the Court after which the attorney for each party and the parties themselves verbally acknowledged consent and understanding of the settlement terms. The Court expressly entered a finding on the record that all *129 matters in controversy between the parties were settled by agreement; that the terms of the settlement were considered adequate and reasonable as they concern the welfare of the parties' minor child.
Following the dictation of the terms into the record, Curtis's attorney, Edward Donovan, was directed by the court to prepare a draft of the settlement, and to forward it to Palmere's attorney, Robert Homes, for his approval as to form. The court stated that it did not need the clients' signatures, just the attorneys'. After some discussion between the parties and the court, and a few changes, Palmere still disagreed with the language of one item in the written judgment, so her attorney did not sign the final draft. The court, however, signed and entered the judgment without the signature of Palmere or her attorney.
¶ 6. Palmere specifically disagreed with the language concerning Curtis's duty to pick up their minor child for visitation in a timely manner. The child was fifteen years old at the time of the hearing, so is now sixteen. However, the term in question was addressed in open court as follows:
MR. HOMES: The other thing is, I think it ought to clearly specify that Henry [Curtis] is, since he's exercising visitation, has to pick Nicky up at the appointed time and bring him back at the appointed time.
THE COURT: That, let me correct that. You are correct on that. And we are still going to have that half an hour leeway time. If he's not there within half an hour, Mom doesn't have to wait.
MR. DONOVAN: And I assume that half an hour would carry over to those occasions where Henry says, I'm working tonight, Friday. So I'll pick him up at 8 o'clock in the morning. Then he would have to wait at least until 8:30.
THE COURT: That's fair. And she's nodding her assention [sic] to that.
. . .
I hereby find on the record that the parties have announced a settlement which is a full accord and satisfaction of their dispute.... I find on the record that the settlement is hereby deemed to be binding. It is accepted by the Court. It is now the Order of the Court.
This was the total discussion of the disputed term dictated to the record. However, the judgment ultimately signed by Curtis's attorney and Judge Teel states as follows:
d. On all occasions for visitation slated to begin at a particular hour, Cindy Palmere shall make sure that Dominic John Curtis is available and prepared to leave with his father at the stated time.... Further, Cindy Palmere and Dominic John Curtis are directed to wait at the Mirimar Avenue home at least for a half of an hour following the scheduled beginning time of visitation. The failure of Henry Curtis to appear without communicated excuse at or within the additional half hour of time shall free Cindy Palmere and Dominic John Curtis from any further obligations to remain at the home beyond the half hour mentioned; in such circumstances each shall be free to go about their own business and assume that Henry Curtis is not coming to exercise his visitation for that particular period. Wanda Curtis (wife of Henry Curtis) may collect Dominic John Curtis from the Palmere residence for visitations and also may provide his *130 transportation for a return at the end of any visitation period.
(emphasis added). Palmere maintains that the added language leaves her and Nicky in the position of having to stay home, when Curtis chooses to communicate an excuse for "being late once again." She contends that this very problem was at the core of her complaints in all her dealings with Curtis over visitation, and that she never agreed to the additional leeway in the terms of the consent agreement.
¶ 7. Curtis argues that, when addressing "that half an hour leeway time," the court must have been referring to the same term that was in the court's previous order of April 28, 1999. Curtis states in his brief that the only half-hour leeway provision ever applied to the parties is the one crafted by the court. The language in the judgment from which Palmere appeals is essentially identical to the term of the previous order. Curtis contends that the judgment fairly tracks the settlement agreement, that the court did not materially deviate from the parties' consent and agreement, and that the absence of approval by Palmere's lawyer is of no consequence.
¶ 8. Curtis further argues that a consent decree is in the nature of a contract and that chancellors are often called upon to interpret contract terms. He maintains that the chancellor was "doing his job when he selected an interpretation he felt fairly matched the concepts of the parties' stipulated agreement." Curtis opines that it seems reasonable for a child to "wait a few minutes (even hours) for his dad if there is some communicated excuse for the dad not showing up by the scheduled time." Curtis argues that the provision first crafted by the chancellor in 1999 is reasonable and should remain a part of the May 19, 2000 judgment.
¶ 9. Palmere argues that it was essential to her agreement that she at least have assurance that further visitation would be exercised timely, and that if Curtis did not show up, with the half-hour leeway, by 6:30 p.m. (on Fridays), with or without excuse, she and Nicky were then free to leave. She contends that Curtis agreed to this provision as dictated into the record on March 20, 2000.
¶ 10. The Mississippi Supreme Court recently addressed divorce agreements in Ivison v. Ivison, 762 So.2d 329 (Miss.2000). Though not an identical situation, the principles still apply to the case sub judice:
A divorce agreement is "no different from any other contract, and the mere fact that it is between a divorcing husband and wife, and incorporated in a divorce decree, does not change its character." East v. East, 493 So.2d 927, 931-32 (Miss.1986). Similarly, in Bell v. Bell, 572 So.2d 841, 844 (Miss.1990), we held that when parties in a divorce proceeding have reached an agreement that a chancery court has approved, we will enforce it, absent fraud or overreaching, and we take a dim view of efforts to modify it just as we do when persons seek relief from improvident contracts.
. . .
A "court is obligated to enforce a contract executed by legally competent parties where the terms of the contract are clear and unambiguous." Merchants & Farmers Bank v. State ex rel. Moore, 651 So.2d 1060, 1061 (Miss.1995). As stated in Delta Pride Catfish, Inc. v. Home Ins. Co., 697 So.2d 400, 404 (Miss. 1997), the parties are bound by the language of the contract where a contract is unambiguous. "The mere fact that the parties disagree about the meaning of a provision of a contract does not make *131 the contract ambiguous as a matter of law." Id.

When a contract is clear and unambiguous, this Court "is not concerned with what the parties may have meant or intended but rather what they said, for the language employed in a contract is the surest guide to what was intended." Shaw v. Burchfield, 481 So.2d 247, 252 (Miss.1985). When this Court interprets a contract, we "look to the contract for its meaning, not what a party thereto may have thought it meant. The standard is objective, measured by the language of the contract, not by the subjective intent or belief of a party which conflicts with meaning ascertained by the objective standard." Landry v. Moody Grishman Agency, Inc., 254 Miss. 363, 375, 181 So.2d 134, 139 (1965). We are "concerned with what the contracting parties have said to each other, not some secret thought of one [that was] not communicated to the other." Mississippi State Highway Com'n v. Patterson Enterprises Ltd., 627 So.2d 261, 263 (Miss.1993).
Ivison, 762 So.2d at (¶¶ 14-17). As argued by Curtis, the consent decree is in the nature of a contract, like the divorce agreement in Ivison. In applying the language of Ivison, when the parties have reached an agreement that a chancery court has approved, we will enforce it, absent fraud or overreaching, and we take a dim view of efforts to modify it. It is of no moment that the consent decree was first orally dictated to the record rather than being in written form. That dictated language was the agreement approved by the chancellor on the record. The parties are bound by the language of the contract where it is clear and unambiguous.
¶ 11. This Court is not concerned with what either party intended, but rather what they said. Curtis argues that the court is often called upon to interpret an ambiguous contract. We do not disagree, but interpreting a term is not the same as making additions thereto. The language dictated into the record is neither unclear nor ambiguous. Curtis has been provided a half-hour leeway beyond the appointed time for his visitation to begin. Beyond that additional half-hour, both Palmere and Nicky are free to leave the house or wait longer for Curtis to arrive. If Curtis cannot retrieve Nicky in a timely manner, he has the option of beginning his visitation on Saturday morning, with the same half-hour leeway beyond the appointed time. Curtis also has the option of having his wife pick up Nicky for visitation when he is unable to do so on time.
¶ 12. While a valid contract may be reformed where a mistake has been made, Allison v. Allison, 203 Miss. 15, 20, 33 So.2d 289, 291 (1948), the general rule is that reformation is justified only if the mistake is a mutual one, or where one party made a mistake and the other party committed fraud or inequitable conduct. Ivison, 762 So.2d at (¶ 21). However, "[t]he mistake that will justify a reformation must be in the drafting of the instrument, not in the making of the contract." Id. (quoting Johnson v. Consolidated Am. Life Ins. Co., 244 So.2d 400, 402 (Miss. 1971)). In the case sub judice, neither party claims that a mistake was made in drafting the instrument, but rather that additional language was intentionally added by Curtis and retained by the court, but never agreed to by Palmere. Curtis argues that the language must have been what the court intended, but the court was not a party to the contract. Curtis may have mistakenly agreed to the language dictated into the record, but that is not a mistake for which reformation is allowed. As stated in Ivison:

*132 It is fundamental in contract law that courts cannot make a contract where none exists, nor can they modify, add to, or subtract from the terms of a contract already in existence. Wallace v. United Miss. Bank, 726 So.2d 578, 584-85 (Miss.1998). A court cannot "draft a contract between two parties where they have not manifested a mutual assent to be bound." A. Copeland Enterprises v. Pickett & Meador, Inc., 422 So.2d 752, 754 (Miss.1982).
Ivison, 762 So.2d at (¶ 23). The additional language in the written consent decree was contrary to the agreement reached by the parties on the record, and it was improper for the trial court to retain the language in the order.

CONCLUSION
¶ 13. The court had no authority to issue a consent agreement which contained a term to which one party did not consent. Therefore, the order of the Harrison County Chancery Court is reversed and remanded to the trial court for the limited purpose of making the judgment consistent with the terms dictated into the record by removing the words "without communicated excuse" from paragraph (d).
¶ 14. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS ARE ASSESSED TO THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR. THOMAS, J., NOT PARTICIPATING.