832 So.2d 534 (2001)
In the Matter of the ESTATE OF Edward A. DAVIS, Deceased.
Diana B. Davis, Appellant,
v.
Sidney D. Davis, Jr., Phillip Davis, Deborah Ammann, Jean Cockrell, Marty Steinberger, Nell Mathis, Lisa McDaniels, and Estate of Sidney D. Davis, Sr., Deceased, Deborah Ammann, Executrix, Appellees.
No. 2000-CA-01232-COA.
Court of Appeals of Mississippi.
November 27, 2001.
Rehearing Denied February 12, 2002.
*535 Orbie S. Craft, Brandon, Attorney for Appellant.
Robert Russell, Williard W. Terrell Stubbs, Attorneys for Appellees.
Before McMILLIN, C.J., BRIDGES, and CHANDLER, JJ.
CHANDLER, J., for the court.

PROCEDURAL HISTORY

FACTS
¶ 1. Edward A. Davis died on December 9, 1995, leaving behind a will and a codicil. The will allocated Davis's assets to a large group, including his nieces and nephews, his caretakers, the March of Dimes, and the American Cancer Society; however, the will left nothing to his wife, Diana B. Davis. The codicil, however, stated that Diana Davis should be given a very fair treatment and consideration in the division of the estate. The will was presented for probate and the Simpson County Chancery Court issued an order admitting the will to probate and granting letters testamentary. Thereafter, Ms. Davis petitioned for widow's support and statutory renunciation of the will. Moreover, she brought a lawsuit contesting the will on the grounds that Edward Davis lacked the mental capacity necessary to execute the will, that the heirs under the will exerted undue influence over Edward Davis, and that several of the heirs conspired to intentionally interfere with Diana and Edward's marital relationship. The will contest was tried before a jury and the jury found against Ms. Davis.
¶ 2. On April 15, 1997, the chancery court held a hearing pertaining to the widow's allowance and ordered that $2,500 per month be paid Ms. Davis for one year. Thereafter, the court entered an order, to which both parties agreed, staying the payment of the widow's allowance and preserving the heirs' rights to interlocutory appeal.
¶ 3. On April 10, 2000, all remaining issues were to go to trial before the Simpson Country Chancery Court. That day, the parties entered into settlement negotiations, and two days later, announced in court that they had reached a settlement. The chancellor asked the parties to dictate the settlement into the record and stated that "[o]nce it's dictated and there's that agreement, once we leave today, it's over."
*536 ¶ 4. During the hearing, Ms. Davis expressed concern over the potential tax consequences of the $600,000 she was to receive as part of the agreement. The chancellor responded by stating no one could guarantee that the money would be tax free. However, the parties agreed that "every reasonable effort" would be made to see that the $600,000 from the estate would be tax free; neither Ms. Davis nor her attorneys continued their objection. Ms. Davis also objected to any agreement which released and protected her former attorney from future malpractice claims; however, the chancellor clarified that the release did not include Ms. Davis's former attorney. Thereafter, without an objection from any party, the chancellor announced that he approved the settlement.
¶ 5. The attorneys drafted an agreed order pursuant to the terms of the settlement agreement. Ms. Davis then declined to sign the agreement and refused to comply with its terms. On June 22, 2000, the chancellor compelled entry of the previous agreement that had been dictated into the record. During this hearing, Ms. Davis objected to the enforcement of the agreement. The chancellor allowed her to read a prepared statement into the record that reiterated her previous arguments and alleged economic duress. The chancellor, finding that an agreement had been reached at the previous hearing, entered final judgment.

STATEMENT OF THE ISSUES

STANDARD OF REVIEW
¶ 6. Diana Davis makes the following assignments of error:
I. WHETHER THE CHANCELLOR ERRED IN ENTERING THE AGREED ORDER.
II. WHETHER THE TERMS OF THE AGREED ORDER WERE THOSE CONTEMPLATED BY THE PARTIES.
¶ 7. We will not disturb the findings of a chancellor unless the chancellor was manifestly wrong or clearly erroneous. Bowers Window and Door Co., Inc. v. Dearman, 549 So.2d 1309, 1312-13 (Miss. 1989). In other words, where the chancellor's factual findings are supported by trustworthy evidence, they are insulated from reversal on appellate review. Jones v. Jones, 532 So.2d 574, 581 (Miss.1988).

DISCUSSION
I. WHETHER THE CHANCELLOR ERRED IN ENFORCING THE AGREEMENT.
A. Was there a meeting of the minds?
¶ 8. Diana Davis argues that the agreement should not be enforced as there was no meeting of the minds. Specifically, she laments that her in-court assertions, taken with her refusal to sign the agreed order, amounted to nothing more than "an agreement to agree later." The heirs, however, insist that the agreement was dictated into the record after extensive negotiation and consultation with legal counsel and family members; therefore, the agreement became binding despite the fact that after it had been reduced to writing Ms. Davis refused to sign it. After careful inspection of the record before us, this Court concludes that the chancellor did not commit manifest error when he determined that the parties were bound by the agreement.
¶ 9. It is well established that settlement agreements are contracts. See McManus v. Howard, 569 So.2d 1213, 1215 (Miss.1990); East v. East, 493 So.2d 927, 931-32 (Miss.1986). As a contract, the *537 settlement agreement must contain an offer, acceptance, and consideration. Gatlin v. Methodist Med. Ctr., Inc., 772 So.2d 1023, 1029(¶ 20) & n. 3 (Miss.2000). Consideration and a meeting of the minds between competent contracting parties are the essential elements of a valid, binding agreement. Viverette v. State Highway Comm'n of Mississippi, 656 So.2d 102, 102 (Miss.1995); Brooks v. Brooks, 145 Miss. 845, 850, 111 So. 376, 377 (1927). This Court has noted there cannot be a meeting of the minds until the offeree accepts the provisions and terms set out by the offer. Edwards v. Wurster Oil Co., Inc., 688 So.2d 772, 775 (Miss.1997); Anderton v. Business Aircraft Inc., 650 So.2d 473, 476 (Miss.1995)(stating that "[f]ailure to communicate acceptance of an offer is fatal to creation of a valid contract.").
¶ 10. An offeree may accept an offer in a number of different ways. See Edwards, 688 So.2d at 775; Gatlin, 772 So.2d at 1029(¶ 20)(noting that acceptance often comes in the form of unwritten agreements). This Court has held that a meeting of the minds could be inferred where the parties to a settlement announce in court that an agreement has been reached and subsequently read the agreement into the trial court record. Carroll v. Henry, 798 So.2d 560(¶ 5) (Miss.Ct.App.2001). See also Palmere v. Curtis, 789 So.2d 126, 131(¶ 10) (Miss.Ct.App.2001)(stating that the dictation of an agreement into the trial court record can constitute evidence of acceptance).
¶ 11. As in Carroll and Palmere, the two parties in the present case announced to the court that an agreement had been reached. Furthermore, they proceeded to read the agreement into the record. However, after the agreement had been read into the record but before the chancellor had approved it, Ms. Davis raised concerns over whether the $600,000 she was to receive would be tax free.
¶ 12. According to Ms. Davis, she made it clear that no agreement was possible unless the money she was to receive would be tax free. However, Mr. Stubbs, attorney for the heirs, addressed the tax consequences of the money as he read the agreement into the record. Mr. Stubbs stated:
And also, Judge, every reasonable effort will be made by, I'm going to say, all parties in this matter to see that the payment of the $600,000 from the E.A. Davis estate to Diana Davis is tax free. They'll make every reasonable effort. But they make no representations, no guarantees thatthe Davis heirs, being Phillip Davis, Deborah Ammann, Jean Cockrell, Marty Steinberger and Sid Davis, Jr. make no representation or guarantees or assurances of any kind or sort to Ms. Diana Davis that this will be tax free.
When this provision was read into the record, neither Ms. Davis nor her attorneys objected. In fact, Mr. Howell, one of Ms. Davis's attorneys, proceeded to a wholly different issue as though the tax provision was not even in dispute.
¶ 13. Ms. Davis's acquiescence to the tax provision can also be inferred throughout other sections of the record. For instance, before Ms. Davis raised any concern, her own attorney asked the chancellor to verbally approve the settlement, indicating no objection to the tax provision. Likewise, once the chancellor approved the settlement, neither Ms. Davis nor her attorneys objected. Finally, at the end of the hearing, the chancellor invited anyone within the courtroom to raise any further issue they might have had with the agreement; again, no one objected.
*538 ¶ 14. Ms. Davis also expressed concern over the release provisions of the agreement, specifically that her former attorney would be immune from any future action she might bring against him. However, the chancellor made it clear that the mutual release only pertained to the present parties and not her former attorney. Thereafter, Ms. Davis appeared to retract her disapproval, at least through her silence and willingness to let her attorneys conclude the hearing. Therefore, we find that any concern Ms. Davis had over the release provisions of the agreement was answered to her satisfaction, at least at that moment, by the chancellor.
¶ 15. Ms. Davis had the right to express concern, and even object to the taxability of the $600,000; furthermore, we concede that it is not always clear in the record as to what the intentions of the parties really were. Nonetheless, our analysis is objective, in this case limited to the record, and we find that Ms. Davis's interjections were merely questions and concerns that did not amount to a rejection of the agreement. In reaching this decision we note that the chancellor, with more than just the record in front of him, was in the best position to determine whether an agreement had been reached. The chancellor, along with everyone else in the courtroom, including Ms. Davis's family and attorneys, went to great lengths to address her comments, to the point that, she gave every indication that her misgivings were abated at the hearing's conclusion. As such, we find that the chancellor did not commit manifest error when he found that there was a meeting of the minds between the parties.
B. Was the agreement void because of economic duress?
¶ 16. Ms. Davis argues that, in the event there was a meeting of the minds, the agreement should be set aside on the ground of economic duress. Specifically, she argues that the estate delayed payment of the widow's allowance for more than four and one-half years; thus, the estate starved her into "considering a settlement, simply to get that to which she had already been adjudged entitled to get, the money she so desperately needed." We find this claim without merit as it fails to establish one of the necessary elements comprising a claim of economic duress.
¶ 17. When a court is presented with a claim of economic duress, it must ultimately determine whether the specific conduct by the dominant party dispossessed the complaining party of all volition. Duckworth v. Allis-Chalmers Mfg. Co., 247 Miss. 198, 203, 150 So.2d 163, 165 (1963). See also Kelso v. McGowan, 604 So.2d 726, 732 (Miss.1992); Crase v. Hahn, 754 So.2d 471, 475(¶ 12) (Miss.Ct.App. 1999). However, "[i]t is not sufficient that one party insisted upon a legal right and the other party yielded to such insistence. [Economic duress] cannot be predicated upon a demand which a party has a legal right to do." Duckworth, 247 Miss. at 203-04, 150 So.2d at 163. See also McGehee v. McGehee, 227 Miss. 170, 183, 85 So.2d 799, 804 (1956)(noting that "[i]t is never duress to threaten to do that which a party has a legal right to do....").
¶ 18. The chancellor issued an order, to which both parties consented, staying the payment of the widow's allowance until the final outcome of all issues pertaining to the action. Furthermore, he ordered the attorney for the estate to place the funds into an interest bearing account until a final judgment had been rendered. According to the heirs:
The parties and the lower court judge wish[ed] to reserve the rights to appeal on the issue of the widow's allowance until the trial of the merits on all issues involved in this case in order that one appeal to the Supreme Court could be had instead of delaying the case pending *539 the outcome of an interlocutory appeal at that time.
Regardless of the reason for the order, the attorney for the estate was specifically ordered to withhold payment of the widow's allowance. To act otherwise would have been a flagrant disregard toward a direct order issued by the chancellor. See Bredemeier v. Jackson, 689 So.2d 770, 777 (Miss. 1997) (stating that a willful and deliberate disregard of a court order constitutes contempt of court). See also Miss.Code Ann. § 9-1-17 (Supp.2000). The parties had a legal right to seek this order and were legally obligated to comply with the chancellor's order; as such, Ms. Davis fails to establish the illegality element of economic duress.
II. WERE THE TERMS OF THE FINAL AGREEMENT CONSISTENT WITH THE TERMS CONTEMPLATED BY THE PARTIES?
¶ 19. Ms. Davis argues that the final agreement signed by the chancellor failed to incorporate a particular provision pertaining to the receipt of stock dividends that the original agreement contained. This, according to Ms. Davis, resulted in an agreement not contemplated by the parties. See Ivison v. Ivison, 762 So.2d 329, 336(¶ 23) (Miss.2000). However, this Court finds that the terms of the agreement as dictated into the record control and are consistent with the chancellor's final order; therefore, Ms. Davis's claims are without merit.
¶ 20. Again we turn to the Palmere decision for guidance. Palmere involved a purported settlement agreement over the custody and child support payments pursuant to a divorce. Palmere, 789 So.2d at 128(¶ 1). As the issues were set for trial, the parties announced that a settlement had been reached and read the settlement into the record. Id. at 128(¶ 2). However, following the agreement, the chancellor entered a final decree that added language to a fundamental term within the initial agreement. Id. at 132(¶ 12). This Court concluded that once the agreement had been dictated into the trial court record, it became binding upon the parties. Id. at 131(¶ 10). Therefore, this Court remanded the case to the chancellor in order that he enter a judgment consistent with the agreement that had been read into the record. Id. at 132(¶ 13).
¶ 21. Unlike the judgment in Palmere, the judgment issued by the chancellor in the case at bar does not detract or add to the essential obligations of the original agreement. Furthermore, neither the heirs nor the estate contest the absence of the collateral language absent in the final judgment. As the attorney for the heirs made clear, Ms. Davis would be entitled to the stock dividends as long as she had legal title to the stock. Finally, the final judgment was entered on June 28, 2000. According to the terms of the final judgment, Ms. Davis was to tender the stock to the court's registry by July 5, 2000. Therefore, she was no longer entitled to the dividends, under the terms of her own agreement, after July 5, 2000. Ms. Davis offers no evidence showing that the dividends were withheld from her during the seven days after the entry of the final judgment. As such, we dismiss Ms. Davis's claim as meritless.
¶ 22. THE JUDGMENT OF THE CHANCERY COURT OF SIMPSON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND BRANTLEY, JJ., CONCUR.