# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-02087-SCT

*SHELBY MICHAEL TOWNSEND*

*v.*

*CATHY ROSE WOODS TOWNSEND (KINNINGHAM)*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/8/2002 |
| TRIAL JUDGE: | HON. JAMES H. C. THOMAS, JR. |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL V. RATLIFF |
| ATTORNEYS FOR APPELLEE: | WILLIAM LAWRENCE PEEBLES |
| | EUGENE LOVE FAIR |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 11/13/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, P.J., EASLEY AND GRAVES, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

### PROCEDURAL HISTORY OF THE CASE

¶1.     This case involves a conflict in the written terms of a final divorce decree and the memorandum of understanding, incorporated by reference into the final divorce decree, concerning retirement benefits. The problem arises from the fact that in the memorandum the retirement benefits were written in terms of a property interest whereas in the final divorce decree they were written in terms of an alimony payment.

¶2.     Cathy Rose Woods Townsend (Cathy) and Shelby Michael Townsend (Michael) were married in 1971. After more than twenty-five years of marriage, Cathy filed for divorce from Michael. On April

4, 1997, a final judgment of divorce was entered in the Chancery Court of Forrest County, Mississippi, the Honorable James H.C. Thomas, Jr. presiding. Cathy was granted a divorce from Michael on the grounds of uncondoned adultery, and the chancellor dismissed Michael's counterclaim. Two children were born during the marriage, both of which were emancipated, and accordingly no custody or child support was at issue.

¶3.     Prior to the final judgment the chancellor entered a Memorandum Opinion on March 13, 1997. This memorandum was specifically incorporated into the April 4, 1997, final judgment of divorce. The memorandum does not contain the word "alimony." The form of the judgment was not signed by either Michael, Cathy or their respective counsel.

¶4.     The payment of the retirement benefits to Cathy by Michael became an issue when Cathy remarried in 2002. On September 27, 2002, Michael filed a motion for modification of the final judgment of divorce. Michael based his motion for modification on the recent marriage of Cathy to Harry Thomas Kinningham, Jr. on May 27, 2002. In his motion, Michael requested that the chancery court modify their final judgment of divorce and eliminate the requirement that he pay alimony to Cathy, terminate his requirement to maintain Cathy as a beneficiary on a life insurance policy and require that Cathy return $2,000 in payments that she allegedly wrongfully received from him.

¶5.     Chancellor Thomas was the chancellor that heard the divorce case, granted the final judgment of divorce containing the memorandum opinion, and also heard the motion for modification. On November 12, 2002, Chancellor Thomas denied the motion for modification. The chancellor ruled that the language of the memorandum was the correct finding and determination of equitable distribution of marital assets and that the language of the final divorce decree misstated the intent of the court and had "improper wording."

2

¶6. After careful review, this Court affirms the chancellor's ruling which denied the modification of the retirement benefits of the final divorce decree. Both Cathy and Michael raised the issue of continuing the life insurance coverage of Michael for Cathy's benefit, the chancellor did not specifically address that issue, and we find that this issue is not properly before this Court for appellate review.

## ISSUES

I.    **Whether the chancery court erred in denying the motion to modify the final judgment of divorce.**

II.    **Whether the chancery court in effect amended the final judgment of divorce in violation of Rule 60 of the Mississippi Rules of Civil Procedure**.

## LEGAL ANALYSIS

### Standard of Review

¶7. "This Court will not disturb the chancellor's opinion when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *McBride v. Jones*, 803 So.2d 1168, 1169 (Miss. 2002) (quoting *Holloman v. Holloman*, 691 So.2d 897, 898 (Miss. 1996)). When reviewing a decision of a chancellor, this Court has only a limited standard of review. *McNeil v. Hester*, 753 So.2d 1057, 1063 (Miss. 2000). This Court reviews the chancellor's decisions under an abuse of discretion standard. *Id*. This Court will not disturb the findings of a chancellor "unless the chancellor was manifestly wrong, clearly erroneous, or applied the wrong legal standard." *Id*. "The Court reviews questions of law, however, under a de novo standard." *Stacy v. Ross*, 798 So.2d 1275, 1277 (Miss. 2001) (citing *Zeman v. Stanford*, 789 So.2d 798, 802 (Miss. 2001)).

## The Documents

### A.    The memorandum

¶8.    The first page of the Memorandum Opinion clearly stated that the "[i]ssues presented are (1) grounds for divorce and **(2) equitable distribution of property**." (emphasis added).  The memorandum then identified an agreed personal property settlement and next identified "[o]ther items of property" which included "United States Air Force (USAF) retirement benefits." The memorandum stated the following:

> Clear and convincing evidence at trial showed plaintiff to have participated in the marriage as a contributing partner with Defendant, helping him through college during the first two years of the marriage thus enabling him to qualify and complete a career as a pilot in the USAF.  Plaintiff did everything expected of a career service wife including the birth and rearing of two children as well as participating in other career enhancing activities.  She is entitled to a substantial portion of the retirement thus created by that career, which the Court sets at $1,000.00 per month of the net retirement proceeds.

The memorandum further stated:

> Plaintiff shall continue to be entitled to health benefits under CHAMPUS as appropriate under existing entitlements of retired military [dependents].  **Since the retire[ment] benefits end at Defendant's death, he shall continue to maintain the life insurance currently in force described at trial** as $500,000.00, with Plaintiff designated as beneficiary on one-half of the benefits and the children of the parties jointly designated as beneficiaries on one-half of the  coverage.

(emphasis added).

¶9.    The memorandum also stated the following in regard to the preparation of a judgment:

> Counsel for Defendant [Michael] is directed to prepare the appropriate judgment in keeping with this opinion.

### B.    The final judgment of divorce

¶10.    The April 1997 final judgment of divorce stated in pertinent part:

V.

4

During the course of the marriage, the parties accumulated certain real and personal property, including...United States Air Force retirement benefits...

\*       \*       \*       \*       \*

VIII.

Mrs. Townsend is entitled to alimony of $1,000.00 per month payable from Mr. Townsend's military retirement benefits.

\*       \*       \*       \*       \*

XIII.

Attached and incorporated into this Final judgment of Divorce as Exhibit "B" is the Memorandum Opinion issued on March 13, 1997.

## C.    The chancellor's ruling denying the motion for modification.

¶11.    In the order denying a modification of the final judgment of divorce, the chancellor ruled that the language of the memorandum was the correct finding and determination of equitable distribution of marital assets and that the language of the final divorce decree misstated the intent of the court and had "improper wording." As stated previously, Chancellor Thomas presided over the divorce proceedings and Michael's motion. The chancellor ruled as follows:

> The Final Judgment of Divorce, *inter alia*, granted Plaintiff alimony of $1,000.00 per month from Defendant's military retirement. Plaintiff remarried on May 27, 2002. The Final Judgment of divorce followed a trial of the matter and a Memorandum Opinion issued by the Court in which it was the finding of the Court that Plaintiff "...is entitled to a substantial portion of the retirement...which the Court sets as $1,000.00 per month of the net retirement proceeds," after finding Plaintiff contributed to Defendant's 20 year career as a pilot in the United States Air Force during a 25 year marriage.
> Plaintiff contends the reference to alimony in the judgment is in error, and Defendant's position is that alimony terminates upon the spouse's remarriage and that the six month period provided under Rule 60 (b)(6) of the MRCP to correct an error in a judgment has long since expired.
> The Final Judgment of Divorce rendered on April 4, 1997 clearly incorporates the Memorandum Opinion of the Court issued on March 13, 1997 as a part of the Judgment. **The Memorandum Opinion is the correct finding and determination of**

**equitable distribution of marital assets between the parties and the Final Judgment of Divorce as prepared by counsel at the request of the Court misstates the intent of the Court. The Court must now accept responsibility for the improper wording being placed in the judgment in characterizing the nature of the $1,000.00 monthly award as alimony, rather that the intended property distribution, but by incorporating the Memorandum Opinion in the Final Judgment [o]f Divorce, the intended finding must prevail in reading the two documents together.** The Motion for modification is denied.

(emphasis added).

> I.      Whether the chancery court erred in denying the motion to modify the final judgment of divorce.
>
> II.     Whether the chancery court in effect amended the final judgment of divorce in violation of Rule 60 of the Mississippi Rules of Civil Procedure.

¶12.    Michael argues that the $1000 monthly retirement payment is periodic alimony which terminated upon the date of Cathy's remarriage. He asserts that the judgment labeled the payment of the retirement as "alimony" whereas the memorandum did not label the payment of the retirement as either alimony or as an equitable distribution of marital assets. He further argues that Cathy did not follow through with an appeal of the final judgment of divorce and therefore chose to forego any objection to the language contained in the judgment. In addition, he claims that:

> If the chancellor had found the language of the Final Judgment inconsistent with the Memorandum Opinion, he should have instructed the drafting attorney to re-draft the Judgment. He did not do so. The Judgment as written must stand.

¶13.    Despite these factual assertions, the heart of Michael's argument centers on Mississippi Rule of Civil Procedure 60(b).

¶14.    Mississippi Rule of Civil Procedure 60 states in part:

>    (a)    Clerical Mistakes. Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by

the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders up until the time the record is transmitted by the clerk of the trial court to the appellate court and the action remains pending therein. Thereafter, such mistakes may be so corrected only with leave of the appellate court.

(b)     Mistakes; Inadvertence; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

(1)     fraud, misrepresentation, or other misconduct of an adverse party;
(2)     accident or mistake;
(3)     newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
(4)     the judgment is void;
(5)     the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application;
(6)     any other reason justifying relief from the judgment.

The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than six months after the judgment, order, or proceeding was entered or taken. A motion under this subdivision does not affect the finality of a judgment or suspend its operation.

¶15.    Rule 60(b)(1-3) provides a limited time frame of six months after a judgment, order or a proceeding was either entered or taken to bring a motion seeking relief. Michael maintains that Cathy waited over five years from the date of the final judgment and over four and one half years after the six-month time period pursuant to Rule 60(b)(1-3) to request a modification of the final judgment. The only other option available to Cathy, according to Michael, is a claim pursuant to Rule 60(b)(6). However, Michael asserts that even pursuant to Rule 60(b)(6) Cathy would still fail because she cannot establish any exceptional circumstances. Michael relies upon *Mitchell v. Nelson*, 830 So.2d 636 (Miss. 2002), for authority.

¶16. In *Mitchell* homeowners sued the previous sellers and sellers argued that the claim fell under Rule 60(b)(3) newly discovered evidence not the Rule 60(b)(6) catch all exception. *Mitchell*, 830 So.2d at 638. This Court held that a claim of newly discovered information more than one year after the final judgment did not meet the exceptional circumstances requirement of Rule 60(b)(6) where the homeowners failed to exercise due diligence in locating a former homeowner. *Mitchell*, 830 So.2d at 639. This Court in *Mitchell* held:

> A Rule 60(b)(6) motion should only be granted in exceptional circumstances. *Moore v. Jacobs*, 752 So.2d 1013, 1017 (Miss.1999). This action does not meet the exceptional circumstance requirement of the rule. This provision of the rule is a catch all provision to allow relief when equity demands. Use of Rule 60(b)(6) must be based on some reason other than the first five enumerated clauses of the rule. See *Briney v. United States Fid. & Guar. Co.*, 714 So.2d 962, 966 (Miss.1998).

*Mitchell*, 830 So.2d at 639.

¶17. Cathy argues that the chancellor is the best judge of the meaning of his own words and that he simply corrected a "clerical mistake" which was made by Michael's attorney when drafting the final divorce decree. According to Cathy, she received a property interest in 1997 "because she earned it and acquired it jointly with Michael during the 25 years of their marriage." She also argues that the chancellor stated in the memorandum that this property right was payable in a measurable amount and terminated upon Michael's death at which time the payment would be replaced by life insurance benefits. She also asserts that the correction is permitted pursuant to M.R.C.P. 60(a) and Miss. Code Ann. § 93-5-23 (Supp. 2003).

¶18. Indeed the comment to Rule 60(a) states in part:

> Rule 60(a) prescribes an efficient method for correcting clerical errors appearing in judgments, orders, or other parts of a trial record; errors of a more substantial nature must be corrected in accordance with MRCP 59(e) or 60(b). Thus, the Rule 60(a) procedure can be utilized only to make the judgment or other document speak the truth; it cannot be

used to make it say something other than was originally pronounced. See, e. g., *West Virginia Oil & Gas Co. v. George E. Breece Lumber Co.*, 213 F.2d 702 (5th Cir. 1954). This procedure accords with prior Mississippi practice. See Miss.Code Ann. § 11-1-19 (1972); *Ralph v. Prester*, 28 Miss. 744 (1855) (this statute applies solely to the correction of judgments and decrees and cannot be extended so as to supply a judgment never rendered).

M.R.C.P. 60 cmt. The comment also states:

> *Healy v. Just*, 53 Miss. 547 (1876) (there is **no time limit** within which a correction to a judgment may be made); *Wilson v. Town of Handsboro*, 99 Miss. 252, 54 So. 845 (1911) (all courts have inherent power to correct clerical errors at any time and to make the judgment entered correspond to that rendered).

M.R.C.P. 60 cmt. (emphasis added).

¶19. Likewise in *Whitney Nat. Bank of New Orleans v. Smith*, 613 So.2d 312, 315 (Miss. 1993), this Court held: "The comment to Rule 60(a) makes clear what should be obvious to all: the power granted in the rule cannot be utilized to change the effect of a judgment, where the changed effect is not manifest from the record that the change reflects the original intent." Cathy argues that in addition to case law and Rule 60(a) giving Mississippi court's the general power to correct clerical or ministerial errors in divorce cases there is another provision for corrections. She cites to *Dilling v. Dilling*, 734 So.2d 327 (Miss. Ct. App. 1999) for authority.

¶20. In *Dilling* there was a conflict with the wording of a property agreement. The monthly mortgage payment indicated that the wife would pay the mortgage yet upon sale of the house the husband would receive a 65% of the equity interest and the wife would receive 35% of the proceeds. *Id*. at 330. The attorney for the wife testified that the language was unclear concerning the provision for the payment of the monthly mortgage and the word "husband" was left out of the document. *Id*. at 331. Both the attorney and the wife testified that the husband initially refused to sign the agreement to pay the monthly mortgage

9

payments until the terms were modified to give him 65% equity upon the house sale. *Id*. at 332. The husband denied these assertions and stated that he only agreed to pay the mortgage until the final divorce and did not know why he received 65% equity in the house. *Id.* at 332. The wife testified that her only source of income was a minimum wage job and child support payments and that her expenses exceeded her monthly income. *Id*. at 333. The chancellor found that there had been a mistake in the agreement and the husband should pay the house note. *Id*. at 333.

¶21. The Court of Appeals stated:

In *East v. East*, 493 So.2d 927, 931-32 (Miss.1986), the Mississippi Supreme Court advised:

> We have also historically recognized that parties may upon dissolution of their marriage have a property settlement incorporated in the divorce decree, and such property settlement is not subject to modification. *A true and genuine property settlement agreement is no different from any other contract,* and the mere fact that it is between a divorcing husband and wife, and incorporated in a divorce decree, does not change its character.

(emphasis added) (citation omitted). The supreme court then noted that Section 93-5-2 of the Mississippi Code "require[d] that the parties make a settlement of their property rights, and the agreement may be incorporated in the decree."

A contract may be reformed. In *Johnson v. Consolidated American Life Ins. Co.*, 244 So.2d 400, 402 (Miss.1971), the Mississippi Supreme Court explained:

> "The general rule in this state and elsewhere is that reformation of a contract is justified only (1) if the mistake is a mutual one, or (2) where there is a mistake on the part of one party and fraud or inequitable conduct on the part of the other. *Allison v. Allison*, 203 Miss. 15, 33 So.2d 289 (1948)."

However, "The mistake that will justify a reformation must be in the drafting of the instrument, not in the making of the contract." *Johnson*, 244 So.2d at 402. A scrivener's error may be sufficient to warrant the reformation of an instrument. *See Sunnybrook Children's Home, Inc. v. Dahlem*, 265 So.2d

10

921, 925 (Miss.1972) (holding that the evidence showed that grantor intended to convey land located in Range 7 East and that the omission of the range number was a scrivener's error which justified reformation of the description of the land attempted to be conveyed in the grantor's deed). Because the Dillings' property settlement agreement was "no different from any other contract," it too could be reformed if there was a "mistake ... in the drafting of the instrument."

*Dilling*, 734 So.2d at 335-36.

¶22. Ultimately, the Court of Appeals determined that there was substantial evidence to support the chancellor's findings and that he did not err in reforming the agreement. *Id*. at 336. The court held the following:

> The financial data about which Ms. Dilling testified, if correct, demonstrated the impossibility of her paying the monthly mortgage payment, insurance premiums, and taxes on the marital home.

> This Court concludes that there was substantial evidence to support the chancellor's finding that paragraph 2 contained a mistake and that, therefore, he did not err when he reformed the Dillings' agreement to require Mr. Dilling to pay the specified expenses related to the Dillings' marital home. While he did not specifically find that the mistake was mutual, this Court further concludes that even if the mistake was only that of Ms. Dilling, which she made through her attorney's error of omission in drafting the Dillings' agreement, Mr. Dillings' conduct was sufficiently inequitable to warrant the reformation of their contract. We find his conduct to be inequitable because of his willingness to accept 65% of the marital home's equity without being able to explain why Ms. Dilling would agree to his receiving that much without his paying the payments we described.

*Id*. The Court of Appeals went further and determined whether Rule 60 gave the chancellor the authority to reform the property agreement. The Court of Appeals stated:

> Whether Mr. Dilling's argument has merit, Rule 60 is not the sole authority for a chancery court's amendment, modification, or revision of a judgment of divorce. We earlier noted that Section 93-5-2(2) provides that a judgment which incorporates a property settlement agreement "may be modified as other judgments for divorce." Section 93-5-23 of the Mississippi Code further provides:

>> When a divorce shall be decreed from the bonds of matrimony, the court may, in its discretion, having regard to the circumstances of the parties and the nature of the case, as may seem equitable and just, make all orders ...

touching the maintenance and alimony of the wife or the husband, or any allowance to be made to her or him, and shall, if need be, require bond, sureties or other guarantee for the payment of the sum so allowed.... *The court may afterwards, on petition, change the decree, and make from time to time such new decrees as the case may require.*

Miss. Code Anno. § 93-5-23 (Rev.1994) (emphasis added).

Rule 81 of the Mississippi Rules of Civil Procedure provides that the Mississippi Rules of Civil Procedure "are subject to limited application in ... actions which are generally governed by statutory procedures." Specifically, the Mississippi Supreme Court has recognized that Title 93 of the Mississippi Code often requires the Mississippi Rules of Civil Procedure to yield to statutory procedures. *See Rawson v. Buta*, 609 So.2d 426, 430 (Miss.1992) (holding that "Mississippi divorce actions are governed by the divorce and alimony provisions of section 93, chapter 5 of the Mississippi Code" and that "the procedural provisions of this chapter limit the applicability of the Mississippi Rules of Civil Procedure, which govern only where the divorce statute stands silent").

Regardless of whether Rule 60 was sufficient authority to support the chancellor's modification of the judgment of divorce which necessarily followed from his reformation of the Dillings's property settlement agreement, this Court holds that either Section 93-5-2(2) or Section 93- 5-23 empowered the chancellor to modify the judgment of divorce by his entry of the supplemental judgment rendered December 9, 1996. Because this Court earlier found substantial evidence to support the chancellor's reformation of the property settlement agreement, this Court affirms the supplemental judgment entered on December 9, 1996, which both reformed the Dillings' property settlement agreement and modified the original judgment of divorce to include the reformed property settlement agreement.

*Dilling*, 734 So.2d at 337.

¶23.    Cathy also relies in part upon *Palmere v. Curtis*, 789 So.2d 126 (Miss. Ct. App. 2001).  In *Palmere* a divorcing couple reached a settlement of child support terms. *Id*. at 128.   The terms were dictated into the court record. *Id*.  Palmere's attorney refused to sign the judgment that Curtis's attorney prepared arguing that it was not in conformity with the terms dictated into the record. *Id*.  Despite this, the chancellor issued the judgment without Palmere's signature. *Id*.   The Court of Appeals held that a court cannot "modify, add to, or subtract from the terms of a contract already in existence." *Id*. at 132 (citing

*Ivison v. Ivison*, 762 So.2d 329, 335 (Miss. 2000)). The Court of Appeals held that the chancellor "had no authority to issue a consent agreement which contained a term to which one party did not consent." *Id*. at 132.

¶24. Likewise, Cathy argues that the chancellor correctly ruled that the word "alimony" could not be added to or modify its earlier ruling outlined in the memorandum opinion. She also argues that Michael bases his argument on procedure and the time constraints in Rule 60(b) but there is no argument that the memorandum opinion of the chancellor was not a clear reflection of its intention. She contends that the meaning of Rule 60(a) is designed to clarify what a court originally meant whereas Rule 60(b) is designed for a change in relief from a judgment whose meaning is clear but incorrect for a number of substantive reasons which are not clerical.

¶25. In the alternative, Cathy contends that if the word "alimony" is not viewed as a clerical or scrivener's error pursuant to Rule 60(a) or Miss. Code Ann. § 93-5-23, then Rule 60(b)(6), which has no time limit, is applicable to the case. She maintains that the inclusion of the word "alimony" which was not intended by the chancellor falls within the "exceptional" circumstances. Cathy makes an additional argument under Rule 60(b)(4) void judgments that case law has generally dealt with the total void of a judgment for process or notice defects, however, she argues that in her case the wording "alimony of" in the final judgment should be void because the meaning was changed from the memorandum and inconsistent with the due process of law.

¶26. This Court finds that the memorandum clearly gave Cathy a property interest in the retirement benefits. The first page of the memorandum indicates that the two issues before the chancellor were solely "(1) grounds for divorce and (2) equitable distribution of property." The USAF benefits were listed as "other items of property" as opposed to the items listed in the agreed personal property settlement. The

chancellor found by clear and convincing evidence that Cathy participated and was a contributing partner in the marriage, including helping Michael through college, raising two children and "other career enhancing activities." Therefore, the chancellor stated in the memorandum that Cathy was entitled to a substantial portion of the retirement, that being $1000 month, created by the career. In addition, the chancellor required that Michael maintain a life insurance policy since his retirement benefits would terminate in the event of his death, with Cathy receiving fifty percent and the children fifty percent of the proceeds.

¶27. The same chancellor who had the memorandum written and granted the final divorce decree also heard Michael's motion for modification. In his ruling the chancellor found that the language of the final divorce decree misstated the intent of the court and had "improper wording." The chancellor stated that the language in the memorandum opinion was "the correct finding and determination of equitable distribution of marital assets between the parties..." and that the language in the divorce decree improperly characterized "the nature of the $1,000.00 monthly award as alimony, rather than the intended property distribution..." We find that the memorandum and the chancellor's own finding on the motion for modification clearly shows that the $1,000 monthly retirement payment was intended to be a property distribution and not an alimony payment. Accordingly, this Court finds that Michael's assertion that the alleged alimony payment ceased upon Cathy's remarriage is without merit.

¶28. Rule 60(a) cannot be used to change the effect of a court's judgment. *Whitney*, 613 So.2d at 315. A court also cannot subtract, add to or modify the terms of a contract that already is in existence. *Palmere*, 784 So.2d at 132. However, Rule 60 (a) places no time limit on the correction of clerical errors. In *Dilling*, the Court of Appeals held that a scrivener's error may be enough to reform an instrument. *Dilling*, 734 So.2d at 335-36. However the mistake must be in drafting and not in the making of the contract. *Dilling*, 734 So.2d at 335-36 (citing *Johnson v. Consolidated American Life Ins.*

14

*Co.*, 244 So.2d 400, 402 (Miss. 1971)).  Indeed, the Court of Appeals found that the even if the mistake was only on the part of Ms. Dilling and her attorney's error in drafting the agreement, Mr. Dilling's conduct still warranted a reformation because of an inequity. *Dilling*, 734 So.2d at 337.

¶29.    This Court finds that the chancellor's opinion was based on substantial evidence.  He reviewed the final divorce decree and the incorporated memorandum, presided over all the matters involving this case and determined that the intent of the chancery court was to award Cathy a property settlement in terms of the $1,000 monthly retirement benefits, not an alimony payment as incorrectly stated in the final judgment. The chancellor did not abuse his discretion by finding that the earlier and incorporated memorandum was the original intent of the chancery court, not the wording of the later divorce decree, in awarding Cathy a property interest in the retirement benefits.  Furthermore, the chancellor's correction of the scrivener's error did not violate M.R.C.P. 60.  Accordingly, we find that the denial of Michael's motion for modification was correct.

### CONCLUSION

¶30.    For the foregoing reasons, this Court affirms the denial of the motion for modification of the Forrest County Chancery Court final divorce decree.

¶31.    **AFFIRMED.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB, CARLSON AND GRAVES, JJ., CONCUR.  DIAZ, J., NOT PARTICIPATING.**

15