¶ 1. Aggrieved by the circuit court's grant of summary judgment in favor of the City of Cleveland, Freddie Lee Johnson, individually and on behalf of the wrongful death beneficiaries of Tommie Lee Johnson, Jr., has appealed to this Court on the issue of whether there was sufficient evidence to create genuine issues of material fact as to whether the officer acted with reckless disregard for the safety and well-being of any person not engaged in criminal activity as defined by Miss. Code Ann. § 11-46-9(1)(c) (Rev. 2002). Finding that the circuit court erred in granting the City's motion for summary judgment in the face of conflicting evidence about the actions of the officer, we reverse the judgment of the Circuit Court of the Second Judicial District of Bolivar County and *Page 1033 
remand this case for a bench trial on all issues.
 FACTS AND PROCEEDINGS IN THE TRIAL COURT
¶ 2. On March 5, 1997, between one and two o'clock in the morning, Officer Charles White with the Cleveland Police Department observed a black truck moving erratically near the intersection of Chrisman Avenue and White Street in Cleveland, Mississippi. After the driver of the truck refused to stop, Officer White requested back-up. A chase ensued and eventually headed south on Chrisman Avenue, west on Carver Street and then north on Church Street. The driver of the truck drove the truck into a driveway at 1322 Church Street, exited the truck while the truck was still running and ran alongside the truck, pushing the truck by the driver's side door. As Officer White approached the vehicle, he could see the driver's feet underneath the truck. Officer White commanded the driver of the truck to stop, but once Officer White reached the truck, the driver had already fled the scene. While Officer White waited for backup to arrive, he searched the area around the truck for the driver. Approximately one minute and a half after the driver of the truck had fled, Officer White heard a noise which sounded like tires squealing on Chrisman Avenue, the next street east of his location. Officer White then heard Officer Danny Oswalt call for an ambulance.
¶ 3. The noise heard by Officer White was the result of a collision between the vehicle driven by Officer Oswalt and a pedestrian, Tommie Lee Johnson, Jr. (Johnson). Officer Oswalt was at the intersection of Highway 8 and Chrisman Avenue when he received Officer White's request for backup. In his deposition Officer Oswalt stated that in response to the call, he traveled south on Chrisman Avenue, immediately activating his blue lights. However, he did not use his siren, but he engaged his airhorn every ten to fifteen feet. Officer Oswalt maintained a speed of 45 to 50 miles per hour, and he slowed down as he approached intersections. The posted speed limit was 30 miles per hour. As he approached the intersection of Carver Street and Chrisman Avenue, Officer Oswalt could not see Officer White's blue lights; therefore, he assumed Officer White had turned on Carver Street. As Officer Oswalt was approaching the intersection of Chrisman Avenue and Carver Street, he saw someone run out in front of him from the direction of Church Street. He applied his brakes and attempted to swerve, but he hit the pedestrian. After striking Johnson, Officer Oswalt immediately called for an ambulance.
¶ 4. On March 5, 1997, at approximately 1:30 a.m., Kevin Quantrell Young was standing in front of Nell's Barber Shop at 1415 So. Chrisman Avenue in Cleveland. In his deposition, Young stated that he saw Johnson walk by the barber shop at 1:40 a.m. headed north on the east side of Chrisman Avenue. After Johnson walked by, Young noticed a Cleveland Police Department patrol car with its blue lights on traveling south on Chrisman Avenue. He noticed that the patrol car was trying to stop a black truck. Young noticed another Cleveland Police Department patrol car traveling south on Chrisman Avenue. However, Young stated the second patrol car did not have its blue lights activated and the car was traveling at least 60 miles per hour. As the patrol car was preparing to turn right onto Carver Street, the car "veered wide to the left" and Young heard a loud noise. When Young arrived at the scene, he noticed that Johnson had been hit by the second patrol car. Young also stated that Johnson was not the driver of *Page 1034 
the black truck being pursued by the first Cleveland Police Department patrol car because only a few minutes had elapsed between the time he saw Johnson walk in front of the barber shop to the time he saw Johnson lying on Chrisman Avenue. Young provided a statement to Officer Charles Bingham on March 6, 1997.
¶ 5. Officer Bingham, a criminal investigator with the Cleveland Police Department, received a call between 1:45 and 2:00 a.m. to investigate the accident. Officer Bingham observed that the driveway where the truck came to rest was muddy, and he also observed footprints in the mud which led away from the truck. Officer Bingham noted Johnson's shoes were also muddy. However, an examination of the evidence collected by Officer Bingham did not produce sufficient evidence to link Johnson to the stolen black truck. Upon Officer Bingham's arrival at the accident scene, Johnson was transported to the Bolivar County Medical Center. Officer Bingham interviewed Officer White and Officer Oswalt and took statements from Cedric James, Cliff Williams, Shawn Mayhall, Kevin Young and Robert Mitchell. After the accident, blood was drawn from Johnson and sent to the Mississippi Crime Lab where it was determined that Johnson's blood tested positive for .10% ethyl alcohol.
¶ 6. Shawn Mayhall was standing in front of his aunt's house when he observed Officer White's pursuit of the black truck. Mayhall remembered seeing the truck earlier in the night because the driver jumped out of the truck and asked him a question. Mayhall first stated that when he saw the second patrol car pass by, the car was speeding, the blue lights were on, but the siren was not. However, only a few questions later, Mayhall stated he did not remember the second car having its blue lights flashing. He remembered the first car, Officer White's car, with its blue lights activated; however, Mayhall stated the second patrol car which was driven by Officer Oswalt did not have its blue lights activated.
¶ 7. As a result of his injuries suffered from the accident, Tommie Lee Johnson, Jr., died on April 14, 1997. On April 16, 1997, Dr. Steven Hayne performed a post-mortem examination on Johnson's body. Dr. Hayne noted that the immediate cause of death was aspiration of gastric contents resulting from the accident involving the City's patrol car.
¶ 8. On May 26, 1998, Freddie Lee Johnson filed this wrongful death action in the Circuit Court of Bolivar County, Mississippi, Second Judicial District, against the City of Cleveland. On August 24, 2001, the City filed its motion for summary judgment asserting that Freddie Lee Johnson had "no proof that Officer Oswalt, at the time of the accident, was acting in reckless disregard for the safety and well-being of Johnson." After reviewing the evidence in the light most favorable to the plaintiffs, the circuit court granted summary judgment in favor of the City finding Officer Oswalt, "who was responding to a call, did not act with reckless disregard as defined by Miss. Code Ann. §11-46-7(1)[sic]."[1]
 DISCUSSION
¶ 9. In order for a summary judgment motion to be properly granted, no genuine issue of material fact may exist, and the moving party must be entitled to judgment as a matter of law. Miss. R.Civ.P. 56(c). This Court reviews a trial court's grant of a motion for summary judgment de novo.Short v. Columbus Rubber Gasket Co., 535 So.2d 61, 63 (Miss. 1988). The burden of proving that *Page 1035 
no genuine issue of material fact exists rests upon the party requesting the summary judgment. Id. at 63-64. The trial court must carefully review all evidentiary matters before it; admissions in pleadings, answers to interrogatories, depositions, affidavits, etc., in the light most favorable to the party against whom the motion for summary judgment is made. McFadden v. State, 542 So.2d 871, 874 (Miss. 1989). See alsoHancock v. Mid Am. Ins. Servs. Inc., 836 So.2d 762, 764-65 (Miss. 2003).
 When a motion for summary judgment is made and supported as provided in Rule 56, an adverse party may not rest upon the mere allegations or denials of his pleadings, his response must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him. If any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise, the decision is affirmed.
Miller v. Meeks, 762 So.2d 302, 304 (Miss. 2000) (citing Brown v.Credit Ctr., Inc., 444 So.2d 358, 362 (Miss. 1983)).
¶ 10. Here, the evidence before the trial court on the City's motion for summary judgment consisted of the depositions of Officer Charles White, Officer Danny Oswalt, Investigator Charles A. Bingham and Shawn Mayhall; the affidavit of Kevin Young; the investigative file of the Cleveland Police Department; the autopsy report prepared by Dr. Steven Hayne and the FBI Crime Lab report.
¶ 11. Officer Danny Oswalt, the officer responding to Officer White's request for backup, testified under oath in his deposition that he activated his blue lights as he turned off of Highway 8 and onto Chrisman Avenue. He stated he kept his blue lights on the entire time. When asked about his speed, Officer Oswalt stated he was driving approximately 45-50 miles per hour, but he would slow down at all intersections. Every 10 to 15 feet, Officer Oswalt used an air horn to alert traffic instead of activating his siren. As he was slowing down to turn onto Carver Street, Officer Oswalt saw someone running from his right. He slammed on the brakes and tried to swerve, but Officer Oswalt collided with the person. Although he stated the person came from his right, the left side of his patrol car received the most damage.
¶ 12. Officer Charles White, the officer in pursuit of the black truck, stated in his deposition that he did not notice Officer Oswalt's blue lights as Officer Oswalt passed by the scene. Shawn Mayhall, a bystander who was standing on Chrisman Avenue at the time of the accident, was also deposed. He first stated that Officer Oswalt was speeding, but his blue lights were flashing. When Mayhall was asked again only moments later about the second police car that passed by him, he stated that he remembered one car having blue lights flashing, but he felt sure it was the first car, Officer White's patrol car. Mayhall again stated that he remembered the second police car speeding down Chrisman Avenue, but he did not remember the blue lights being activated. Kevin Young gave a sworn statement in which he stated that Officer Oswalt's patrol car, the second police car he saw on the night of the accident, was traveling at least 60 miles per hour without the blue lights flashing.
¶ 13. Based upon all of the evidence submitted on the motion for summary judgment, the trial court found that the officer who responded to the backup call did not act with reckless disregard pursuant to the Mississippi Tort Claims Act. Therefore, the City's motion for summary judgment was granted. *Page 1036 
¶ 14. Since Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983), where we for the first time discussed our summary judgment procedure pursuant to Miss. R.Civ.P. 56, the cases are legion which hold that summary judgment is inappropriate if there is a genuine issue of material fact in accordance with Miss. R.Civ.P. 56(c). Today's case falls into that category. "[S]ummary judgment is inappropriate where there are undisputed facts which are susceptible to more than one interpretation."Canizaro v. Mobile Comms. Corp. of Am., 655 So.2d 25, 28 (Miss. 1995). "And should it determine that the undisputed facts can support more than one interpretation, the Court will not hesitate to reverse and remand for a trial on the merits." Id. at 28-29.
¶ 15. Here, critical factual disputes preclude summary judgment in this case. Officer Danny Oswalt made conclusory statements during his deposition to the effect that his blue lights were activated. However, conflicting testimony clearly disputes Officer Oswalt's testimony. This conflicting testimony created a material factual dispute that must be resolved by the trier of fact, but only after a full evidentiary hearing by way of a bench trial. On remand a non-jury (bench) trial will be conducted by the trial judge pursuant to Miss. Code Ann. § 11-46-13(1). However, at a bench trial, as opposed to deposition testimony, affidavits, files and reports, there will likely be witnesses subject to extensive examination and cross-examination, and the learned trial judge, as the trier of fact, will then have the benefit of more than the cold words on paper via deposition testimony, affidavits, investigative files and reports. The trial judge will instead have the opportunity of not only hearing the sworn testimony of the witnesses but also observing their demeanor. See Culbreath v. Johnson, 427 So.2d 705, 708 (Miss. 1983). Of course, we do not intimate any view as to the proper decision on remand after the bench trial. Such decision is left to the sound discretion of the trial judge upon a plenary trial.
 CONCLUSION
¶ 16. It is for these reasons that we reverse the circuit court's order granting summary judgment in favor of the City and remand this case for a bench trial consistent with this opinion.
¶ 17. REVERSED AND REMANDED.
PITTMAN, C.J., SMITH, P.J., WALLER, COBB, DIAZ AND GRAVES, JJ.,CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTENOPINION. EASLEY, J., DISSENTS WITH SEPARATE WRITTEN OPINION.
[1] The proper statute defining reckless disregard is Miss. Code Ann. § 11-46-9(1)(c).