# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-01299-SCT

*JERRY WAYNE DUCKWORTH*

*v.*

*DAVID CARROL WARREN, BART WALKER INDIVIDUALLY AND AS AGENT, SERVANT, EMPLOYEE AND STATE TROOPER OF THE STATE OF ALABAMA, THE STATE OF ALABAMA, RAY STOCKMAN, INDIVIDUALLY AND AS AGENT, SERVANT AND EMPLOYEE OF EMERGYSTAT, INC.; EMERGYSTAT, INC., A CORPORATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/13/2007 |
| TRIAL JUDGE: | HON. SHARION R. AYCOCK |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CHARLES RAYMOND WAITS, III |
| | B. KELLY HARDWICK |
| ATTORNEYS FOR APPELLEES: | JAMES T. METZ |
| | BETTY RUTH FOX |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 05/28/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLSON, P.J., LAMAR AND CHANDLER, JJ.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Aggrieved by the Monroe County Circuit Court's grant of summary judgment and entry of final judgment in favor of the State of Alabama and Alabama State Trooper Bart Walker, Jerry Wayne Duckworth appealed to this Court. Finding error in the trial court's grant of the Alabama defendants' Renewed Motion for Summary Judgment, we reverse the

trial court's final judgment and remand this case to the Circuit Court of Monroe County for a jury trial consistent with this opinion.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2. On February 12, 2002, Alabama State Trooper Bart Walker was preparing to check licenses in Lamar County, Alabama, when he noticed a Toyota Celica with a broken windshield and containing passengers who were not wearing safety belts. Trooper Walker began following the vehicle, which was later determined to be owned and driven by David Carrol Warren. Warren attempted to elude Trooper Walker, and Walker radioed his Hamilton, Alabama, Trooper Station dispatcher to advise of his pursuit. Trooper Walker continued his pursuit of the suspect from Aberdeen Road in Lamar County, Alabama, into Monroe County, Mississippi, on Vernon Road. Prior to entering the State of Mississippi, Trooper Walker radioed his Hamilton, Alabama, post, which in turn notified the Lamar County, Alabama, Sheriff's Department and the Monroe County, Mississippi, Sheriff's Department of Walker's pursuit of Warren.[1]

¶3. After temporarily losing sight of the Toyota Celica while on Vernon Road, in Mississippi, and while still pursuing Warren, Trooper Walker came upon an accident scene. Walker quickly realized that the Toyota Celica he had been pursuing had collided with a vehicle driven by a person later identified as Jerry Wayne Duckworth, whose vehicle was

---

[1]The State of Alabama pursuit policy maintains that "[n]ormally, pursuits into another state should be avoided. However, if circumstances warrant continuing pursuit into another state, a supervisor and the affected Division Chief must be notified, as well as the primary law enforcement agency of the other state."

2

knocked off the road by the impact. Duckworth was trapped inside his vehicle, and he had suffered injuries from the collision, including broken bones, dislocations, and lacerations. Upon being freed from his vehicle, Duckworth was loaded into an Emergystat, Inc., ambulance, which subsequently had an accident while transporting Duckworth.

¶4.    The pursuit was captured on a video recorder located in Trooper Walker's police cruiser. This video revealed that the entire pursuit of Warren from Lamar County, Alabama, until his collision with Duckworth in Monroe County, Mississippi, lasted approximately six and one-half minutes, with good visibility. The average speed of the pursuit was sixty miles per hour, and it covered nearly six and one-half miles. The speed limit in the area was forty-five miles per hour. Trooper Walker came upon the collision site seconds after the accident had occurred, but he did not witness the collision, because it took place at a curvy, hilly section of Vernon Road, which is a two-lane county road in a rural area. Trooper Walker said he proceeded at all times using both sirens and blue lights; he did not encounter any pedestrian traffic; and he passed nine oncoming vehicles during the roughly six-mile stretch. During the pursuit, Trooper Walker obtained the vehicle's tag number, but he did not know the identity of the driver.

¶5.    Jerry Wayne Duckworth filed this action against the State of Alabama, Trooper Bart Walker, David Carrol Warren, Emergystat, Inc., and Ray Stockman (the ambulance driver), alleging that their negligence and/or wantonness and/or recklessness caused his injuries and

3

damages.[2] Duckworth made no effort to file suit under the Mississippi Tort Claims Act (Mississippi Code Sections 11-46-1 to 11-46-19). In fact, in his complaint, Duckworth alleged that "[t]his is a tort action brought under the laws of the State of Mississippi and under the common law of the State of Mississippi."

¶6. On June 16, 2006, a hearing was held in the Circuit Court of Monroe County, Judge Sharion R. Aycock presiding, on the motion for summary judgment filed by the State of Alabama and Alabama State Trooper Bart Walker ("Alabama defendants"); Judge Aycock denied the motion on October 30, 2006. The Alabama defendants filed a motion for reconsideration of their motion for summary judgment on June 15, 2007, based on the United States Supreme Court's April 30, 2007, decision in *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). The trial court heard the renewed motion on July 2, 2007, and on July 5, 2007, entered its opinion and order granting the Alabama defendants' motion for summary judgment.

¶7. After the entry of its opinion and order granting summary judgment in favor of the Alabama defendants, but prior to the entry of a final judgment, Duckworth settled his claims

---

[2]The original style of the case, which was filed in the Circuit Court of Monroe County, was "Jerry Wayne Duckworth, Plaintiff v. David Carrol Warren; Bart Walker, Individually and as Agent, Servant, Employee and State Trooper of the State of Alabama; The State of Alabama; Ray Stockman, Individually and as Agent, Servant and Employee of Emergystat, Inc.; Emergystat, Inc., A Corporation; and Unknown Defendants 1-5, Defendants." The appropriateness of this appeal based on the disposition of this case as to the remaining defendants in the trial court will be discussed in more detail, *infra*.

4

against the remaining defendants, Ray Stockman and Emergystat, Inc.[3] Thus, when the trial court subsequently entered a final judgment consistent with the previously entered opinion and order, the trial court stated, *inter alia*, in its final judgment:

> [T]he Court was advised that [Duckworth] had reached a settlement of his claims against the remaining Defendants, Emergystat, Inc. and Ray Stockman.
> . . . .
> [F]inal judgment is entered in favor of Defendants Bart Walker and the State of Alabama on all claims asserted against them in this suit.
> . . . .
> [I]n light of the settlement between [Duckworth] and the remaining Defendants, the claims of [Duckworth] against Emergystat, Inc. and Ray Stockman are dismissed with prejudice.

¶8.    Duckworth perfected this appeal, asserting three issues: (1) whether the trial court erred in granting the Alabama defendants' motion for reconsideration of their original summary judgment motion; (2) whether the trial court erred in granting summary judgment when there were genuine issues of material fact supported by the record; and (3) whether the trial court erred in granting summary judgment when the trial court previously had denied the motion and no new evidence was presented in the record. All three assignments of error obviously pertain to the trial court's grant of summary judgment; therefore, we combine the above-stated issues and restate the issue for the sake of clarity in discussion.

---

[3]Although the original complaint named as defendants "Unknown Defendants 1-5," pursuant to Mississippi Rule of Civil Procedure 9(h), thus providing for subsequent amendment(s) upon learning the true name(s) of the unknown defendant(s), the record does not indicate that any additional parties were added to this lawsuit.

**DISCUSSION**

**WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE ALABAMA DEFENDANTS.**

¶9. In reviewing a trial court's grant or denial of summary judgment, the well-established standard of review is *de novo*. *One South, Inc. v. Hollowell*, 963 So. 2d 1156, 1160 (Miss. 2007) (citing *Hubbard v. Wansley*, 954 So. 2d 951, 956 (Miss. 2007)). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). *See also Johnson v. City of Cleveland*, 846 So. 2d 1031, 1034-35 (Miss. 2003). "The evidence must be viewed in the light most favorable to the party against whom the motion has been made." *One South*, 963 So. 2d at 1160; *Green v. Allendale Planting Co.*, 954 So. 2d 1032, 1037 (Miss. 2007) (quoting *Price v. Purdue Pharma Co.*, 920 So. 2d 479, 483 (Miss. 2006)). "The moving party has the burden of demonstrating that [no] genuine issue of material fact[s] exists, and the non-moving party must be given the benefit of the doubt concerning the existence of a material fact." *One South*, 963 So. 2d at 1160 (quoting *Howard v. City of Biloxi*, 943 So. 2d 751, 754 (Miss. Ct. App. 2006)). Further, "[s]ummary judgment is inappropriate where there are undisputed facts which are susceptible to more than one interpretation." *Johnson*, 846 So. 2d at 1036 (quoting *Canizaro v. Mobile Comms. Corp. of Am.*, 655 So. 2d 25, 28 (Miss. 1995)).

6

¶10. The trial court found that, considering the totality of the circumstances, no genuine issues of material fact existed that Trooper Walker had acted in reckless disregard for the rights of Duckworth or other motorists on Aberdeen and Vernon Roads. However, Duckworth argues that genuine issues of material fact existed on such matters as: (1) whether the pursuit was too lengthy based on the road conditions, the seriousness of the offenses for which Warren was being pursued, and alternative means of apprehension; and (2) whether the pursuit violated the State of Alabama's pursuit policy.

¶11. This Court has set forth ten factors which must be considered when determining whether a police pursuit was accomplished in "reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury." Miss. Code Ann. § 11-46-9(1)(c) (Rev. 2002); *see Johnson*, 846 So. 2d at 1037 (McRae, P.J., concurring in result only). The trial court analyzed the facts according to these factors; however, a negligence theory is appropriate in the case *sub judice*, since Alabama State Trooper Bart Walker has no immunity under the Mississippi Tort Claims Act. *See* Miss. Code Ann. §§ 11-46-1(f), 11-46-7 (Rev. 2002). *See also City of Cherokee, Alabama v. Parsons*, 944 So. 2d 886, 890 (Miss. 2006). For purposes of the Mississippi Tort Claims Act, an employee is defined as follows:

> "Employee" means any officer, employee or servant of the State of Mississippi or a political subdivision of the state, including elected or appointed officials and persons acting on behalf of the state or a political subdivision in any official capacity, temporarily or permanently, in the service of the state or a political subdivision whether with or without compensation. The term "employee" shall not mean a person or other legal entity while acting in the capacity of an independent contractor under contract to the state or a political

7

subdivision; provided, however, that for purposes of the limits of liability provided for in Section 11-46-15, the term "employee" shall include physicians under contract to provide health services with the State Board of Health, the State Board of Mental Health or any county or municipal jail facility while rendering services under such contract. The term "employee" shall also include any physician, dentist or other health care practitioner employed by the University of Mississippi Medical Center (UMMC) and its departmental practice plans who is a faculty member and provides health care services only for patients at UMMC or its affiliated practice sites. The term "employee" shall also include any physician, dentist or other health care practitioner employed by any university under the control of the Board of Trustees of State Institutions of Higher Learning who practices only on the campus of any university under the control of the Board of Trustees of State Institutions of Higher Learning. The term "employee" shall also include any physician, dentist or other health care practitioner employed by the State Veterans Affairs Board and who provides health care services for patients for the State Veterans Affairs Board. The term "employee" shall also include Mississippi Department of Human Services licensed foster parents for the limited purposes of coverage under the Tort Claims Act as provided in Section 11-46-8.

Miss. Code Ann. § 11-46-1(f) (Rev. 2002). Therefore, the Mississippi Tort Claims Act does not apply, and summary judgment is appropriate only if no genuine issues of material fact exist as to whether the police pursuit was accomplished in a negligent manner.

¶12. The Alabama defendants relied on a United States Supreme Court case to support their motion for reconsideration of their motion for summary judgment, namely, *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). In *Scott*, the Court reversed a decision of the Eleventh Circuit Court of Appeals based on the record of a high-speed police chase recorded by a video camera positioned in a police cruiser. *Scott*, 550 U.S. at 380-81. The Court held:

When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court

8

> should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.
>
> That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life. Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Id. Scott* thus informs our courts that where the record contains a videotape of disputed facts capturing the events in question, the courts should view the story as depicted by the videotape, when one party's version is blatantly contradicted, for the purpose of ruling on a summary judgment motion. *Id.*

¶13.    In all fairness to the trial judge, we note that in the diligent performance of her duties, which included the preparation of a detailed, eight-page opinion and order thoroughly analyzing the issues, Judge Aycock likewise viewed the videotape in this case prior to ruling on the summary judgment motion before her.  In viewing the videotape of the pursuit, Judge Aycock was able to visualize the events as they occurred.

¶14.    Likewise, this Court, on appeal, has the benefit of the videotape depicting the pursuit in this case. In applying the relevant law to today's case, and in viewing the pursuit video, we are unable to conclude that no genuine issues of material fact exist regarding whether Trooper Walker pursued the suspect in a negligent manner. The pursuit covered approximately six and one-half miles in approximately six and one-half minutes through a rural area, making the average speed of the pursuit sixty miles per hour in a forty-five-mile-per-hour zone.  Duckworth argues that the pursuit was too long and should have been

9

terminated earlier. His expert, Dennis Waller, also maintained that "termination of the pursuit would have terminated the reckless behavior by the driver of the Toyota." Vernon Road, where the accident occurred, is a two-lane county road, with curves and hills. The road condition deteriorates, with a more narrow road bed when nearing the accident site. Although Trooper Walker asserts that he slowed his vehicle and created a greater following distance in this area, Duckworth and his expert argue that "a car traveling at speeds of 60 mph and greater on that stretch of Vernon Road in Mississippi would pose an inherently dangerous situation to any oncoming traffic." As evidenced by the video, during the six-mile stretch, Trooper Walker passed nine oncoming vehicles. When considering these facts, reasonable minds could differ on the issue of whether Trooper Walker's actions were negligent.

¶15.    The length of the pursuit is susceptible to more than one interpretation. Although the parties agree on its length, they dispute whether six and one-half minutes was too long under the circumstances and other conditions surrounding the pursuit. The road conditions create another triable issue of fact. Duckworth contends that the curves on Vernon Road are "exacerbated by various hills, narrowness of the road, poor condition of the pavement, and trees and growth very near the road." When combining the road conditions with the other factors at issue, reasonable minds could conclude that Trooper Walker should have ceased pursuit when road conditions deteriorated.

¶16.    The record reveals numerous triable issues of fact which must be submitted to the jury. Even some of the undisputed facts before this Court are susceptible to more than one

interpretation, and therefore the trial court erred in granting summary judgment. *See Johnson*, 846 So. 2d at 1036 (quoting *Canizaro*, 655 So. 2d at 28). In the end, Duckworth asserts classic claims for negligence in which a plaintiff has the burden of proving (1) a duty, (2) a breach of that duty, (3) causal connection between the breach of the duty and the purported injury, and (4) damages resulting therefrom. *Laurel Yamaha, Inc. v. Freeman*, 956 So. 2d 897, 904 (Miss. 2007) (citing *Meena v. Wilburn*, 603 So. 2d 866, 869-70, n.5 (Miss. 1992)). *See also Burnham v. Tabb*, 508 So. 2d 1072, 1074 (Miss. 1987).

## CONCLUSION

¶17.    For the reasons stated, we reverse the trial court's grant of summary judgment and entry of a final judgment against Jerry Wayne Duckworth, and in favor of Bart Walker, Individually and as Agent, Servant, Employee, and State Trooper of the State of Alabama; and the State of Alabama, and we remand this case to the Circuit Court of Monroe County for a jury trial on all plaintiff's causes of action.

¶18.    **REVERSED AND REMANDED.**

**WALLER, C.J., GRAVES, P.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS AND CHANDLER, JJ., CONCUR.  PIERCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**PIERCE, JUSTICE, DISSENTING:**

¶19.    I respectfully dissent with the majority opinion today, since I would affirm the trial court's ruling to grant summary judgment, but for reasons other than those stated by the trial court.

11

¶20. This Court determined that the Mississippi Torts Claim Act (MTCA) is inapplicable to the facts because the Act does not extend to Alabama Trooper Walker and the State of Alabama, as they are not "employees" as defined by the Act. I agree. However, I disagree with the majority's determination that genuine issues of material fact exist on the issue of negligence.

¶21. Duckworth contends that there are genuine issues of material fact on (1) whether Trooper Walker's pursuit violated the State of Alabama's pursuit policy, and (2) whether the pursuit was too lengthy considering the circumstances. While there may be some differences in each parties' alleged version of events, the fact remains that police officers are sworn to enforce the laws. In order to perform their duties, officers must have the ability to pursue suspects in a reasonably prudent manner; otherwise, practically speaking, no suspect could be detained short of a voluntary surrender. The most obvious dilemma for Duckworth, although not the only problem with the instant case, which will be discussed *infra*, is that he cannot prove the element of causation. There is no dispute that Warren collided with Duckworth's vehicle. Thus, Warren, not Trooper Walker, is the cause in fact of the collision. This is fatal to Duckworth's claim.

**I.**

¶22. This Court applies a de novo standard of review to a trial court's grant or denial of summary judgment. ***Moss v. Batesville Casket Co.***, 935 So. 2d 393, 398 (Miss. 2006). Rule 56 of the Mississippi Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file,

12

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). The evidence is viewed by the court in the light most favorable to the nonmoving party, and the moving party has the burden of demonstrating that there is no genuine issue of material fact. *Fletcher v. Lyles*, 999 So. 2d 1271, 1276 (Miss. 2009). In *Calvert v. Griggs*, 992 So. 2d 627, 632 (Miss. 2008) this Court stated:

> The existence of a genuine issue of material fact will preclude summary judgment. A fact is material if it "tends to resolve any of the issues properly raised by the parties." The motion "should be overruled unless the trial court finds, beyond a reasonable doubt, that the plaintiff would be unable to prove any facts to support his claim."

*Calvert*, 992 So. 2d at 632.

¶23. This Court determined that a general negligence claim, not a MTCA claim, was at issue in this case. In *Glover v. Jackson State University*, this Court defined negligence as "doing what a reasonable, prudent person would not do, or failing to do what a reasonable, prudent person would do, under substantially similar circumstances." *Glover*, 968 So. 2d 1267, 1277 (Miss. 2007). In *Todd v. First Baptist Church of West Point*, this Court set forth the elements required to prove negligence and stated:

> The elements of a prima facie case of negligence are duty, breach, causation, and damages. Duty and breach must be established first. The elements of breach and proximate cause must be established by the plaintiff with supporting evidence.

*Todd*, 993 So. 2d 827, 829 (Miss. 2008) (citations omitted). "Duty and breach of duty, which both involve forseeability, are essential to finding negligence and must be demonstrated

13

first." ***Simpson v. Boyd***, 880 So. 2d 1047, 1050 (Miss. 2004) (citing ***Donald v. Amoco Prod. Co.***, 735 So. 2d 161, 174 (Miss. 1999)). In order to rebut Trooper Walker's showing that no genuine issue of material fact exists, Duckworth has to "[produce] supportive evidence of significant and probative value" that demonstrates that Trooper Walker "breached the established standard of care and that such breach was the proximate cause" of Duckworth's injury. ***Id***.

## II.

¶24. As noted above, as a law enforcement officer, Trooper Walker had a duty to enforce the laws and ensure that all citizens abide by the laws. In order to perform these tasks, a police officer must have the ability reasonably to pursue individuals who violate or are suspected of violating the law. When a police department has a pursuit policy in effect, however, the officer must reasonably follow the guidelines as set forth in the policy. Trooper Walker followed his department's pursuit policy. The record reflects that the evidence, when viewed in the light most favorable to Duckworth, shows no general issue of material fact on the issue of the police pursuit policy.

¶25. Other than noting generally that there were "numerous triable issues of fact" to place before a jury, the majority does not address the alleged violation of the police pursuit policy per se. Nonetheless, the pursuit policy of the State of Alabama states:

> Normally, pursuits into another state should be avoided. However, if circumstances warrant continuing pursuit into another state, a supervisor and the affected Division Chief must be notified, as well as the primary law enforcement agency of the other state.

14

¶26.   The record reveals that Trooper Walker observed a broken windshield and occupants not wearing seatbelts in Warren's vehicle.  After the trooper began to follow Warren's vehicle with his blue lights on, Warren pulled his car to the side of the road.  When Trooper Walker began to exit his patrol car to approach Warren's vehicle, Warren turned his vehicle around in a circular driveway and began to flee.  At this point, Trooper Walker returned to his patrol car and began to pursue Warren.  Thereafter, Trooper Walker contacted his dispatch center to give notification of his pursuit of Warren's eluding vehicle.  As the pursuit progressed, Trooper Walker notified the dispatch center that the chase was heading into Mississippi.  The dispatch center, in turn, contacted the sheriff's department in Lamar County, Alabama, and the sheriff's department in Monroe County, Mississippi.  At no time was Trooper Walker instructed to end his pursuit of the fleeing vehicle.  The facts demonstrate that Trooper Walker complied with the Alabama pursuit policy.

**III.**

¶27.   Duckworth also argued that there were genuine issues of material fact as to whether the pursuit was too long considering the road conditions, the offense of the driver, and whether there were alternate means of apprehending Warren.  Again, when viewing the evidence in the light most favorable to the nonmoving party, Duckworth, it could not support a jury verdict in favor of Duckworth on the issue of negligence in regard to Trooper Walker's pursuit of Warren on Vernon Road.  The simple fact is that Warren was the proximate cause of the collision and Duckworth's sustained injuries.  Apart from this obvious fact, which

15

defeats Duckworth's ability to prove a vital element of negligence, that being causation, he also cannot prove that Trooper Walker breached any duty.

¶28.    The majority notes in its opinion that this is an unusual case since the events at issue were captured on a videotape.  The trial court and this Court had the benefit of viewing the police-cruiser videotape of the vehicle pursuit.  As the majority aptly points out, the Alabama defendants rely on the United States Supreme Court case ***Scott v. Harris***, 550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).  In ***Scott***, a Georgia highway patrolman forced a driver from a Georgia highway during a police chase, resulting in critical injuries to the driver of the fleeing vehicle.  ***Id***. at 375.  In its analysis, the United States Supreme Court reviewed a motion for summary judgment.  ***Id***. at 378.  Even looking at evidence in the light most favorable to the nonmoving party, the ***Scott*** Court determined:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c).  As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.***, 475 U.S. 574, 586-587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (footnote omitted).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 247-248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

16

That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life. Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Scott*, 550 U.S. at 380-381.

¶29. Here, the trial court and this Court had the benefit of viewing the entire pursuit from the police-cruiser videotape. The whole pursuit lasted less than six and one-half minutes, covering approximately six miles. The videotape depicted a pursuit over a rural, wooded, two-lane country road. Few or no houses and no businesses were located on the route of the pursuit. The videotape showed no pedestrians on the route.

¶30. By all indications, the pursuit occurred during bright, daytime hours with little oncoming traffic between 4:55 p.m. and 5:02 p.m. Other than Duckworth's vehicle, Trooper Walker and Warren passed eight oncoming vehicles during the pursuit. Neither Trooper Walker nor Warren passed any vehicle traveling in the same direction as he was. Indeed, the video showed no vehicle traveling in the same direction as the trooper and Warren. The record reveals that Trooper Walker had both his blue lights and his sirens on at the time of pursuit.

¶31. No alternatives would have led to Warren's capture. While Trooper Walker did obtain the license plate number of Warren's vehicle, there was no guarantee as to the identity of the driver. Further, the United States Supreme Court in *Scott* acknowledged that when police discontinue a pursuit, the suspect cannot be notified that the chase has ended,

17

therefore, the suspect likely will continue to race away rather than slow down his or her speed. *Scott*, 550 U.S. at 385. The *Scott* Court further stated:

> [W]e are loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive *so recklessly* that they put other people's lives in danger. It is obvious the perverse incentives such a rule would create: Every fleeing motorist would know that escape is within his grasp, if only he accelerates to 90 miles per hour, crosses the double-yellow line a few times, and runs a few red lights. The Constitution assuredly does not impose this invitation to impunity-earned-by-recklessness.

*Id*. at 385-86. *See also City of Jackson v. Brister*, 838 So. 2d 274, 285 (Miss. 2003) (Easley, J., dissenting).

¶32. During the course of this short pursuit, the trooper increased his speed to approximately sixty miles per hour. The video shows that Trooper Walker always maintained a reasonable distance between his cruiser and Warren's vehicle. In fact, the latter portion of the video showed that Trooper Walker increased the distance between his cruiser and Warren's vehicle well prior to the collision between Warren and Duckworth. Additionally, Warren's vehicle was in the line of Trooper Walker's vision and was depicted on the video for the entire chase, except for the last few moments of the pursuit when a curve prevented taping of the collision. Apart from the curve at the very end of the pursuit, the video captured every moment of the police chase, and the view was never blocked or hindered by roadway obstructions or weather conditions.

¶33. The record contains much more than the police-pursuit videotape. For instance, Duckworth relies on his expert Dennis Waller. The expert opined that termination of the pursuit would have stopped Warren's reckless driving. This opinion is nothing more than

18

mere speculation. Even the United States Supreme Court, in *Scott*, noted that police have no way of broadcasting to the fleeing suspect that a pursuit has ended. The majority notes that the road bed narrows nearer to crash site. The video shows otherwise: The roadways are a uniform width throughout the pursuit.

¶34. Further, Waller asserted that a vehicle traveling more than sixty miles per hour on Vernon Road poses an inherently dangerous risk to oncoming traffic. Trooper Walker and Warren passed eight oncoming vehicles without incident. Speed is not necessarily the determining factor to the risk. Indeed, the video depicts no sign posts mandating speed reduction on this stretch of road, and more specifically, before the curve near the crash site. Further, it is undeniable that there was a large distance between Trooper Walker's cruiser and Warren's vehicle well before the collision.

¶35. Notwithstanding these opinions, there are no genuine issues of material fact. Trooper Walker conducted his pursuit of Warren pursuant to Alabama's pursuit policy. He also proceeded in a cautious and reasonable manner throughout the pursuit, and he was not the proximate cause of the collision. Therefore, Trooper Walker was not negligent in the performance of his duties.

## IV.

¶36. Trooper Walker was not eligible for the protections of the MTCA because of his status as an out-of-state law-enforcement officer. In the interest of promoting public safety and law and order, Mississippi and its surrounding states should consider measures that reduce liability for law enforcement officers who conduct police business by pursuing fleeing

19

suspects across state lines.[4] Every Mississippian has an interest in maintaining law and order within our borders. However, to maintain that order, our police officers may have occasion to travel outside our state's borders. Likewise, in this case, an Alabama officer traveled outside his state. By not implementing limited liability or some form of interstate immunity, where appropriate, suspects need only race to the state line to avoid police action. In other words, suspects near state borders have an incentive to evade police and run for the border to escape detainment and/or prosecution.

¶37. The MTCA sets forth a reckless-disregard standard to be implemented in intrastate pursuit chases in Mississippi. Miss. Code Ann. § 11-46-91(1)(c) (Rev. 2002). This standard is analyzed in terms of ten factors to determine whether a police pursuit was performed in reckless disregard for the safety and well-being of other individuals not engaged in criminal activity. *See City of Ellisville v. Richardson*, 913 So. 2d 973, 977 (Miss. 2005). This standard, or some form thereof, should be used as a basis for suits involving interstate police pursuits.

## V.

¶38. For the foregoing reasons, I dissent from the majority opinion and would affirm the trial court's grant of summary judgment, but for reasons other than those stated by the trial court.

---

[4] The record contains only a copy of the Alabama pursuit policy. No additional pursuit policies for Mississippi or any of her surrounding sister states are included in the record for comparison purposes.