IRVING, P.J.,
dissenting:
¶ 20. The majority finds that the circuit court did not err in granting summary judgment for Hester in the Ladniers’ lawsuit against Hester for injuries they sustained when their vehicle collided with Diego, a horse owned by Hester. Because I believe the evidence fails to show that Hester proved that he was entitled to summary judgment as a matter of law, I dissent. I would reverse and remand this case for a trial on the merits.
¶ 21. The majority’s recitation of the facts are sufficient to provide a general understanding of the issue presented; therefore, I will recite only such additional facts as may be pertinent to my view of the proper resolution of the issue. In support of his motion for summary judgment, Hester submitted a memorandum or law, the depositions of himself and of the Ladniers, and a photograph of the damaged fence.
*1080 ¶22. The proponent of a motion for summary judgment must show — based upon the “pleadings, depositions, answers to interrogatories!!,] and admissions on file, together with the affidavits, if any, ... that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). This requirement places upon the movant the burden of persuasion and production. Sweet v. TCI MS, Inc., 47 So.3d 89, 93 (¶ 17) (Miss.2010). If the proponent makes such a showing, the opponent, or adverse party, cannot then rest on his pleadings; he must then show by affidavits or by other means permitted by Rule 56 “that there is a genuine issue for trial.” M.R.C.P. 56(e). In other words, Hester, as the moving party, had a responsibility to first show that he was entitled to summary judgment as a matter of law before the Ladniers were required to respond and show that there was a genuine issue for trial. John v. Louisiana (Bd. of Tr. for State Coll. & Univ.), 757 F.2d 698, 708 (5th Cir.1985). The evidence must be viewed in the light most favorable to the Ladniers. Sweet, 47 So.3d at 91 (¶ 9). If there is doubt regarding the existence of a genuine issue of material fact, the benefit goes to the Ladniers. Miller v. R.B. Wall Oil Co., 970 So.2d 127, 130 (¶ 5) (Miss.2007). Furthermore, the court should err in favor of a trial on the merits. Brown v. Credit Center, Inc., 444 So.2d 358, 363 (Miss. 1983).
¶23. The record reflects that Hester did not attach an affidavit from an expert indicating that his fence was adequate for the containment of horses, nor did he show what the industry standard is for the construction of fences for the containment of horses and that he met that standard. Further, Hester did not present an itemization of the uncontested facts with his motion for summary judgment. He did, however, list the following facts as a part of his memorandum, which he contends the summary-judgment evidence establishes conclusively:
(1) Diana was traveling southbound on River Road just after midnight on January 2, 2008, when the vehicle she was driving struck a horse owned by Hester;
(2) Three horses owned by Hester had escaped from the fenced-in field next to Hester’s home by trampling down the barbwire fence;
(3) The horses had been in the fenced area since March of 2006;
(4) The fence where the horses escaped had been erected in March 2006;
(5) The fence where the horses escaped was made of “horse-and-cattle box wire” with six-foot steel posts spaced approximately every ten feet;
(6) By January of 2008, the horses had been on the property just shy of two years;
(7) Hester fed the horses daily;
(8) Prior to the accident, Hester had fed the horses at 6:00 p.m., which would have been just six hours before the accident;
(9) Hester testified that most of the time he checked the fence every night during feeding time and that he visually observed the fence on January 1, 2006, at approximately 6:00 p.m.
(10) Diana testified that she did not know how the horses got out of the fence;
(11) Diana also stated that she knew of no problems with the fence; and
(12) Lawrence did not have any knowledge of the horses having gotten out of the fence before.
¶ 24. It is clear to me that the facts listed above do not show that the fence that Hester constructed in March 2006 was suitable or adequate for maintaining Diego *1081 and the other two horses that escaped. Nor do they show that Hester was not negligent in choosing what he called “just basic horse and cattle box wire” to construct half of the fence rather than some other wire specifically suited for containing large animals. Diego weighed at least one thousand pounds. Again, it was Hester’s responsibility to show that he was entitled to judgment as a matter of law, which means that, at the summary-judgment stage, he must show that he was not negligent. But if we were to accept, as the majority does, that the failure of the horses to escape for nearly two years proves that the fence was adequate and that Hester was not negligent in utilizing “just basic horse and cattle box wire,” the converse would also be true. That is, since the horses did escape, despite never having done so for nearly two years, the fence had to be inadequate, for if the fence was adequate, the horses would have never escaped
¶ 25. The majority, as well as the trial court, embraces the evidentiary basis offered by Hester, which in the view of the majority justifies the granting of summary to Hester:
Hester provided the following evidence that no genuine issue of material fact existed regarding the Ladniers’ negligence claim. Hester described the field wire fence at issue as “just basic horse and cattle box wire.” Importantly the horses had not escaped their pasture in the two years prior to the incident, since they had been enclosed there, -with the same fence at issue. Hester determined that in this instance, the horses had escaped by smashing down the box wire field fence to approximately two feet from the ground, but there was no evidence as to why. While Lawrence theorized that Hester’s horses were malnourished, hungry, and enticed by the Bahia grass in the pasture across the road, the evidence showed otherwise. Hester fed his horses daily at 6:00 p.m. with grain and/or hay, and he maintained the horses had been fed approximately six hours before the escape. Hester also visually inspected the fence daily during feeding time, and nothing appeared amiss the night before the accident. Further, while Hester’s neighbor had let the horses graze on his Bahia grass approximately one week per month, that had only been during the prior summer, six months before the incident.
Majority opinion at (¶ 10). It is clear from the quoted passage that the majority has concluded that since the horses did not escape for nearly two years, there is no genuine issue of fact regarding the adequacy of the fence. As stated, the glow of this reasoning dims when it is extended to its logical end, as it would be just as true, following this reasoning, that the fence was inadequate since the horses did escape. “Summary judgment is inappropriate when there are undisputed facts which are susceptible to more than one interpretation.” Johnson v. City of Cleveland, 846 So.2d 1031, 1036 (¶ 14) (Miss.2003) (quoting Canizaro v. Mobile Commc’n Corp. of Am., 655 So.2d 25, 28 (Miss.1995)). I do not think that it can be reasonably disputed that a fence that is properly constructed out of proper materials and properly maintained can keep a horse from escaping. Whether that was the case here is, in my opinion, a jury question in the absence of any proof, at the summary judgment-stage, that the fence was constructed to industry standards for maintaining large horses.
¶ 26. It is of some significance that a portion of the fence was constructed with barbwire and the remainder was constructed with what Hester described as “basic horse and cattle box wire.” Law *1082 rence, testifying by deposition, described the wire as field-fence wire and said that, based on his experience, field-fence wire was unsuitable for containing horses. It does not appear to me that Hester can be considered an expert on wire fences for the containment of horses simply because he built a fence that contained the horses for nearly two years before they escaped. Lawrence testified that he was a “horse person” and that he had built many fences for the containment of horses. He also testified that he had a “high intensity, all electric fence” for his horses. Clearly, Lawrence’s testimony that Hester’s fence was inappropriate for containing horses deserves as much credit as Hester’s, as the evidence shows that Lawrence is as knowledgeable of horse fences as Hester, if not more so. Since Hester and Lawrence contradict each other regarding the adequacy of Hester’s fence, it cannot be said that no genuine issue of material fact remains for trial, as the adequacy of Hester’s fence is central to whether he was negligent in his choice of materials for construction of the fence.
¶ 27. The majority erroneously shifts the burden to the Ladniers to prove, by “testimony, exhibits, expert opinions, product warnings, or recognized industry standards,” that the field-fence wire was inadequate. Majority opinion at (¶ 12). As stated, Hester, as the movant, bears the burden of persuasion and production to show that he was not negligent in the choice of fence wire that he used to construct the fence, as it is his responsibility to show that he is entitled to summary judgment as a matter of law. He cannot make that showing without producing un-contradicted evidence showing that he was not negligent. What he produced, via his and Lawrence’s depositions, is conflicting evidence on the adequacy of the fence. Given this conflicting evidence, it would have been necessary for Hester to present expert testimony or documentation as to recognized industry standards showing that his fence was properly constructed out of materials suitable for containing a horse as large as Diego. He failed to do so, and his failure to do so means that he was not entitled to summary judgment, and the Ladniers were not required to produce any rebuttal evidence. For the reasons presented, I dissent. I would reverse and remand this case for a trial on the merits.
LEE, C.J., AND RUSSELL, J., JOIN THIS OPINION.