# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-IA-01356-SCT

*TOMMY BROOKS OIL COMPANY, A
MISSISSIPPI CORPORATION*

*v.*

*JERRY WILBURN AND WILBURN OIL
COMPANY, INC.*


| | |
|---|---|
| DATE OF JUDGMENT: | 08/22/2016 |
| TRIAL JUDGE: | HON. JAMES SETH ANDREW POUNDS |
| TRIAL COURT ATTORNEYS: | MARTHA B. STEGALL |
| | WILLIAM C. SPENCER |
| | WILLIAM C. SPENCER, JR. |
| | MICHAEL D. GREER |
| | MICHAEL P. MILLS, JR. |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WALTER D. WILLSON |
| | RANDY L. DEAN |
| | KEVIN A. ROGERS |
| ATTORNEYS FOR APPELLEES: | WILLIAM C. SPENCER, JR. |
| | WILLIAM C. SPENCER |
| | MICHAEL D. GREER |
| | MICHAEL P. MILLS, JR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 03/29/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


## CONSOLIDATED WITH

## NO. 2016-CA-01400-SCT

*TOMMY BROOKS OIL COMPANY*

*v.*

*JERRY WILBURN*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/22/2016 |
| TRIAL JUDGE: | HON. JAMES SETH ANDREW POUNDS |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WALTER D. WILLSON |
| | RANDY L. DEAN |
| | KEVIN A. ROGERS |
| ATTORNEYS FOR APPELLEE: | WILLIAM C. SPENCER, JR. |
| | WILLIAM C. SPENCER |
| | MICHAEL D. GREER |
| | MICHAEL P. MILLS, JR. |
| NATURE OF THE CASE: | CIVIL- CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 03/29/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., CHAMBERLIN AND ISHEE, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     Tommy Brooks Oil Co. ("Brooks Oil") challenges the trial court's grant of summary judgment in favor of Jerry Wilburn.[1]  The party moving for summary judgment bears the burden to demonstrate that there is no genuine issue as to any material fact and that judgment should be rendered as a matter of law.  Wilburn did not meet this burden, and the trial court erred in granting summary judgment.

¶2.     According to Brooks Oil, Wilburn Oil Co., Inc. ("Wilburn Oil") had amassed nearly

---

[1] Tommy Brooks was the president and primary shareholder of Brooks Oil; Jerry Wilburn was the president and primary shareholder of Wilburn Oil Co., Inc.

$1 million in unpaid fuel bills before Brooks Oil refused to sell Wilburn Oil any more fuel until Wilburn executed two personal guaranties for $250,000. After Brooks Oil sued Wilburn to enforce the guaranties, Wilburn moved for summary judgment, claiming a unilateral or mutual mistake concerning the guaranties. According to Wilburn, the parties never intended the guaranties to include Wilburn Oil's past debt. The trial court agreed and granted summary judgment, dismissing Brooks Oil's suit against Wilburn with prejudice. As Wilburn did not meet his summary-judgment burden, we reverse the trial court's judgment and remand the case for further proceedings.

## FACTS AND PROCEDURAL HISTORY

### *Background*

¶3.     Through the years, Brooks Oil supplied Wilburn Oil with fuel products at a number of Wilburn Oil's gas stations. Since late 2012, though, Wilburn Oil—according to Brooks Oil—had failed to pay all the fuel invoices sent by Brooks Oil. Brooks Oil claimed that Wilburn Oil owed it nearly $1 million in unpaid fuel bills by 2013. In order for Brooks Oil to resume selling Wilburn Oil fuel products, Wilburn signed two personal guaranties to Brooks Oil's benefit. The first guaranty, executed on June 20, 2013, was for $100,000. The second guaranty, executed on August 29, 2013, was for $150,000. Aside from the amount guaranteed, the language of the guaranties was identical and provided that Wilburn guaranteed to Brooks Oil that he personally would be liable for Wilburn Oil's debt "due or to become due . . . now existing or hereafter arising. . . ." Before resuming delivery, Brooks Oil had Wilburn Oil also agree to a two-cent-per-gallon increase in the purchase prices for

3

fuel products. The increase was to be applied to Wilburn Oil's outstanding invoices.

*The Guaranties Suit by Brooks Oil against Wilburn*

¶4.     On May 8, 2014, Brooks Oil sued Wilburn (the "guaranties suit"). Brooks Oil claimed that Wilburn Oil was not paying the outstanding invoices and sought to collect from Wilburn on the personal guaranties. Wilburn answered the complaint, claiming that Wilburn Oil had not defaulted on any obligation to Brooks Oil. He also claimed that he had not breached any of the guaranties' obligations. Wilburn maintained that if there were any ambiguities in the guaranties, they should be resolved in his favor.

¶5.     After engaging in discovery, Wilburn moved for summary judgment. In his brief in support of his motion, Wilburn argued that neither party intended for the guaranties to apply to past debt. He claimed that there was either a mutual mistake or a unilateral mistake. To support his motion, Wilburn quoted portions of his own deposition testimony as well as Brooks's deposition testimony. Wilburn cited the following exchange in Brooks's deposition:

| | |
|---|---|
| Attorney: | Okay. At what point did you ask Mr. Wilburn for a personal guaranty? |
| Brooks: | When he come to me and needed more money. He said he had some accounts that he had to get gas to, and I said, "Jerry, I can't let you have any more." And that's when the personal guaranty came into place. |
| | . . . |
| Attorney: | What was the purpose for it? |
| Brooks: | For taking any future gas being guaranteed. |

4

| Attorney: | Okay. So it was a protection on your part for future sales from that point on? |
|---|---|
| Brooks: | I thought it was. |
| | . . . |
| Attorney: | You already told me what the guaranty was for. It was for future purchase. |
| Brooks: | Yeah. Future purchases. |

Wilburn also cited the following exchange from his own deposition, which was taken just two days after Brooks's deposition:

| Attorney: | Why were you asked to sign [the first guaranty agreement]? |
|---|---|
| Wilburn: | Because of what I purchased from that day on. |
| | . . . |
| Wilburn: | Because [Brooks] said he needed a guaranty agreement from that day on because he was old and I was old, and we didn't want to leave anybody out. He said, this is from this day on. |

¶6.    In light of his own testimony, Wilburn claimed that Brooks's testimony showed either a unilateral mistake or a mutual mistake by the parties. He argued that it was clear from both his and Brooks's depositions that the guaranties were to apply only to any future debt. Wilburn requested that the trial court either rescind the guaranties or reform them to reflect the parties' intent that the guaranties applied only to future debt.

¶7.    Brooks Oil disputed Wilburn's claims, pointing to the guaranties' language covering existing debts. It contended that, "at a minimum" there were genuine issues of material fact

5

for a jury to decide as to the parties' intent. Brooks Oil also tried to clarify Brooks's deposition testimony through two affidavits, one from Brook and one from Lee Murphree, Brooks Oil's secretary and treasurer. Through the affidavits, Brooks Oil attempted to provide background information on the dealings between itself and Wilburn Oil.

¶8. Wilburn moved to strike the two affidavits. He claimed that Lee Murphree's affidavit was not based on any personal knowledge, was self-serving, and was unsupported by relevant material facts. As for Brooks's affidavit, Wilburn claimed it was self-serving, was unsupported by relevant material facts, and was designed only to avoid summary judgment by contradicting Brooks's prior, deposition testimony.

¶9. The trial court held a hearing on Wilburn's motions to strike the affidavits and his motion for summary judgment. After hearing argument from the parties, the trial court agreed with Wilburn and struck both affidavits. Immediately after striking the two affidavits, the trial court granted Wilburn's motion for summary judgment and dismissed Brooks Oil's suit against Wilburn with prejudice.

*Open Account Suit by Brooks Oil against Wilburn Oil*

¶10. Shortly after filing its suit against Wilburn, individually, Brooks Oil filed a complaint against Wilburn Oil for the unpaid fuel invoices (the "open account suit"). Brooks Oil claimed there were $984,078.02 in unpaid invoices. Wilburn Oil never answered Brooks Oil's complaint, and Brooks Oil was awarded a default judgment of $1,184,272.52. Wilburn Oil then filed a motion under Mississippi Rule of Civil Procedure 60 to set aside the default judgment. Ultimately, the trial court set aside the default judgment and consolidated the

open-accounts suit with the guaranties suit.

*Interlocutory Appeal*

¶11. Brooks Oil filed an interlocutory appeal from the trial court's grant of summary judgment to Wilburn in the guaranties suit. Per this Court's November 30, 2016, order, the open accounts suit currently is stayed, pending the resolution of this appeal.

¶12. On appeal, Brooks Oil claims that the trial court erred in granting Wilburn's summary judgment motion because Wilburn failed to demonstrate that there was no genuine issue as to any material fact. It is unclear from either the trial court's order or its bench ruling under which theory it granted summary judgment—that of mutual mistake or unilateral mistake. As such, we will address each theory in turn. Because Wilburn failed to meet his burden for summary judgment, we reverse the trial court's judgment. Also, as it is unnecessary to address whether the trial court erred in striking the affidavits, we decline to do so.

**STANDARD OF REVIEW**

¶13. We review a trial court's grant or denial of a summary-judgment motion de novo. ***Indem. Ins. Co. of N. America v. Guidant Mut. Ins. Co.***, 99 So. 3d 142, 149 (Miss. 2012) (citation omitted). Granting summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). We view this evidence in the light most favorable to the nonmoving party. ***Indem. Ins. Co. of N. America***, 99 So. 3d at 149 (quotation and citation omitted). "Further, '[s]ummary judgment is inappropriate where there

7

are undisputed facts which are susceptible to more than one interpretation.'" ***Duckworth v. Warren***, 10 So. 3d 433, 437 (Miss. 2009) (quoting ***Johnson v. City of Cleveland***, 846 So. 2d 1031, 1036 (Miss. 2003))

## ANALYSIS

### I.     Mutual Mistake

¶14.    A mutual mistake between parties is where "a variance [exists] between their agreement and the instrument intended to express it . . . ." ***U.S. Fid. & Guar. Co. v. Gough***, 289 So. 2d 925, 927 (Miss. 1974).  Further, a mutual mistake is a defense to contract formation.  17A Am. Jur. 2d *Contracts* § 198 (2004).  Reforming the agreement is justified when the mistake is in the *drafting* of the agreement, but not in the *making* of the agreement. ***Johnson v. Consol. Am. Life Ins. Co.***, 244 So. 2d 400, 402 (Miss. 1971).  Rescinding the agreement is appropriate where both parties are operating under a mutual mistake of fact, such as a mistake in the nature of the agreement or in the identity of the parties or subject matter.  ***White v. Cooke***, 4 So. 3d 330, 334 (Miss. 2009) (citation omitted).

¶15.    Wilburn did not meet his summary-judgment burden to demonstrate that there was no issue of material fact.[2]  The entire mutual-mistake defense rests on Wilburn's interpretation of a few lines from Brooks's deposition.  Wilburn's interpretation alone, though, does not establish that there is no genuine issue as to any material fact.  Indeed, even without Brooks

---

[2] We note that the evidentiary standard of proof for a mutual mistake (and a unilateral mistake) is beyond a reasonable doubt.  *See* ***Steinwinder v. Aetna Cas. & Sur. Co.***, 742 So. 2d 1150 (Miss. 1999) ("Proof must establish mutual mistake beyond a reasonable doubt."); *see also* ***Rotenberry v. Hooker***, 864 So. 2d 266, 271 (Miss. 2003) ("Mississippi courts require that unilateral mistake, like mutual mistake, be proven beyond a reasonable doubt.").

Oil's affidavits, which the trial court struck, Brooks's statement could be read to mean that, because of Wilburn Oil's significant outstanding debt, Wilburn was required to guarantee some portion of the existing debt before any more debt was incurred.

¶16.    Further, Brooks testified only concerning the first guaranty executed in June 2013. There are, however, *two separate* guaranties. Notably, there is no record evidence of any mistake as to the second guaranty executed in August 2013—seventy days after the June guaranty.

¶17.    The language of the guaranties also supports Brooks Oil's claim that summary judgment was not proper. The "Guaranty" paragraph in each agreement, aside from the dollar amount, is identical. Wilburn agreed to guarantee Wilburn Oil's debt to Brooks Oil, whether that debt was "due or to become due" or was "now existing or hereafter arising."[3] As mentioned above, there are *two* guaranties. Thus, the parties must have fallen into the same mutual mistake *twice*.

¶18.    Wilburn's argument that Brooks's deposition testimony shows a mutual mistake is undercut by the parties' alleged dealings and conduct to address Wilburn Oil's unpaid fuel bills. Beyond entering into the guaranties, Wilburn Oil and Brooks Oil agreed to a two-cent-per-gallon increase to fuel prices to pay down the existing Wilburn Oil debt—evidencing the fact that Wilburn Oil's past debt concerned Brooks Oil. Also, even if we view Brooks's deposition statement as undisputed, summary judgment should not be granted "where there

---

[3]Further, just before the signature line, each guaranty contains a **NOTICE TO GUARANTOR** that provides, in part, "**You may have to pay up to the full amount of the debt if the Borrower does not pay.**" (Emphasis in original.)

are undisputed facts which are susceptible to more than one interpretation." ***Duckworth***, 10 So. 3d 433, 437 (Miss. 2009) (quotation omitted).

¶19.    Genuine issues of material fact exist on the issue of what debt the parties intended the guaranties to cover.  Brooks's deposition statement, which is subject to more than one interpretation, is insufficient evidence that no genuine issue as to any material fact exists concerning the parties' intent.  Therefore, the trial court erred in granting summary judgment.

## II.    Unilateral Mistake

¶20.    The record is devoid of any evidence to support Wilburn's alternative argument that both guaranties contain unilateral mistakes.[4]  A unilateral mistake justifying reformation is one where "there is a mistake on the part of one of the parties to the contract and fraud or inequitable conduct related to the m[i]stake on the part of the other." ***Gough***, 289 So. 2d at 927; *see also* ***Johnson***, 244 So. 2d at 402.  A unilateral mistake justifying rescission is one where:

> . . . the mistake is of so fundamental a character, that the minds of the parties have never, in fact, met; or where an unconscionable advantage has been gained, by mere mistake or misapprehension; and there was no gross negligence on the part of the plaintiff, either in falling into the error, or in not sooner claiming redress; and no intervening rights have accrued; and the parties may still be placed *in statu quo* . . . .

***Rotenberry***, 864 So. 2d at 271 (citation omitted) (emphasis omitted).

¶21.    As to reformation, Wilburn fails to offer any evidence of "fraud or inequitable conduct."  In his summary-judgment motion, Wilburn simply states that it would be unfair

---

[4] It is unlikely that the trial court granted Wilburn summary judgment on this ground—especially since unilateral mistake was not argued at the hearing.  Nevertheless, we address the argument directly, as it is without merit.

for Brooks Oil to take advantage of a confused party. He does not show any fraud by Brooks Oil. Nor does Wilburn allege, or the record show, any inequitable conduct by Brooks Oil. As to rescission, the evidence put forth by Wilburn simply does not support a grant of summary judgment. The record does not demonstrate any fraud by Brooks, and it is not clear whose attorney drafted the guaranties. Further, Wilburn signed two agreements, one in June and one in August. Both had identical language (other than the dollar amount), and Wilburn would have had to have made the same unilateral mistake *twice*. On this record, the trial court erred if it granted summary judgment under this theory. We reverse the grant of summary judgment and remand the case for further proceedings.

## CONCLUSION

¶22.    Wilburn was required to show there were no issues of material fact for his defenses of unilateral or mutual mistake. A brief statement during a deposition, which is subject to more than one interpretation, is insufficient to meet Wilburn's burden for summary judgment. Brooks's statement, when viewed against the language of the two guaranties and the parties' conduct, demonstrates that Wilburn did not show that there are no genuine issues of material fact. The trial court's grant of summary judgment is reversed, and this case is remanded for further proceedings.

¶23.    **REVERSED AND REMANDED.**

       **WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., KING, COLEMAN, BEAM AND ISHEE, JJ., CONCUR. MAXWELL, J., NOT PARTICIPATING.**